Argued and submitted on August 31, 2007, affirmed April 30, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENNETH WAYNE BAILEY,
*Defendant-Appellant.*

Lane County Circuit Court
200406042A; A126255

183 P3d 232

Bronson D. James, Deputy Public Defender, argued the cause for appellant. On the brief were Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, and Jennelle Meeks Barton, Deputy Public Defender, Office of Public Defense Services.

Michael R. Washington, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Benjamin R. Hartman, Assistant Attorney General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Defendant appeals a judgment of conviction for one count of first-degree aggravated theft, ORS 164.057; five counts of unauthorized use of a vehicle, ORS 164.135; one count of first-degree theft, ORS 164.055; five counts of possession of a stolen vehicle, ORS 819.300; and one count of tampering with a witness, ORS 162.285. Defendant assigns error to the trial court's denial of his motion for judgment of acquittal on the witness-tampering charge. We affirm.[1]

We state the facts in the light most favorable to the state, which prevailed at trial. *State v. Cervantes*, 319 Or 121, 123, 873 P2d 316 (1994). In August 2003, defendant told his daughter, Steller, that he had recently purchased several all-terrain vehicles (ATVs). Defendant briefly gave one of the ATVs—a red Honda—to Steller, but later took it back for maintenance. Several months later, Steller saw several posters at a local convenience store offering a reward for the return of a red Honda ATV matching the description of the one that defendant had given her to use. Suspicious, Steller called defendant and asked him if the ATVs that he claimed to have purchased were in fact stolen. After defendant's affirmative response, Steller informed defendant of her intention to report him to the police. According to Steller, defendant responded that "if [she] made the call * * * he was going to kill [her] and that [making the call] would be the stupidest thing [she] could ever do in [her] life."

Nevertheless, in January 2004, Steller reported defendant's involvement in the theft. In the days following the conversation in which Steller told defendant of her intention to report him, defendant left Steller several threatening voicemail messages. In the first, he urged her not to call the police, adding, "If you make fucking phone calls starting any bullshit, it'll be the last phone call you fucking make." Steller eventually obtained a restraining order against defendant. After learning of the restraining order, defendant, who had been helping Steller financially, called her and denied threatening to kill her, insisting that he had only meant that he

---

[1] We reject defendant's other assignment of error, challenging his sentence as a repeat property offender, without discussion.

would no longer provide her with financial assistance. Defendant told Steller that he had already ended her phone service and would sell her trailer home and cancel her car insurance. In two different messages, defendant also threatened to help Steller's ex-husband gain custody of Steller's daughter. In his final message, defendant stated:

> "You'll be homeless come Monday morning if you make that phone call, you can count on it. Because I will call [unintelligible] and you will be fucking homeless. Don't even threaten me, don't even fucking play games 'cause you don't even know how to play the fucking games I know how to play."

Defendant was indicted on several charges, including witness tampering. At trial, defendant testified that, after Steller filed the police report, he immediately ended all financial assistance. He maintained, however, that his decision to withdraw financial support to Steller was based on his disapproval of her boyfriend. Following the presentation of evidence at trial, defendant moved for a judgment of acquittal on the witness-tampering charge. The trial court denied the motion, and defendant was convicted after a jury trial.

On appeal, defendant contends that, under the witness-tampering statute, ORS 162.285, witness tampering cannot occur until an "official proceeding" is pending. He argues that he did not believe that Steller was a potential witness in a pending official proceeding and that, in any event, he did not attempt to induce her to offer false testimony or unlawfully withhold testimony as contemplated by the statute, but rather only to refrain from making a report to the police. The state responds that witness tampering does not depend on whether an official proceeding is pending, but on a defendant's belief that a witness could testify against him in the future. The state maintains that defendant's threats were not only intended to deter Steller's reporting of the thefts, but to deter any future testimony in any official proceeding against him.

In determining whether the trial court correctly denied defendant's motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting

reasonable inferences and making reasonable credibility choices, could have found, beyond a reasonable doubt, the essential elements of the offense. *State v. Metcalfe*, 172 Or App 501, 503, 19 P3d 374 (2001). In this case, before considering the evidence, we must first determine the scope of the conduct prohibited by ORS 162.285(1)(a). In doing so, we follow the familiar interpretative methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), seeking to discern the legislature's intent in enacting the statute by examining the statute's text in context and, if necessary, its legislative history and other aids to construction.

ORS 162.285(1) provides:

"A person commits the crime of tampering with a witness if:

"(a)  The person knowingly induces or attempts to induce a witness or a person the person *believes may be called as a witness in any official proceeding* to offer false testimony or *unlawfully withhold any testimony*; or

"(b)  The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned."

(Emphases added.) The state concedes that the facts do not support a conviction under paragraph (b). Accordingly, as pertinent here, the statute applies to conduct directed toward a person who the defendant "believes may be called as a witness in any official proceeding" and punishes inducing or attempting to induce such a potential witness to "unlawfully withhold any testimony."

We first address defendant's contention that the statute's reference to "any official proceeding" indicates only *pending* official proceedings and is therefore inapplicable here, because his actions occurred before any official proceeding was pending. That construction is undercut by the legislature's choice to prohibit tampering with a person who the defendant "believes may be called as a witness." The statute prohibits inducements to false testimony or disobedience to legal process when the defendant *believes* that the person

may be called as a witnesses, suggesting that, at the time of the inducement, an official proceeding need not be pending.

Further, the statute prohibits conduct against a person who may be called in "any official proceeding." An "official proceeding" is defined by statute as "a proceeding before any judicial, legislative or administrative body or officer, wherein sworn statements are received, and includes any * * * person taking sworn statements in connection with such proceedings." ORS 162.225(2) (applying the definition to ORS 162.285 "unless the context requires otherwise"). Because the adjective "any" is not defined in the statute, we accord that term its plain and natural meaning, *PGE*, 317 Or at 611, which includes:

> "**1** : one indifferently out of more than two : one or some indiscriminately of whatever kind: **a** : one or another : this, that or the other—*used as a function word esp. in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category but whichever one chance may select* * * * **b** : one, no matter what one : *EVERY* * * * **[2] b** : *ALL*—used as a function word to indicate the maximum or whole of a number of quantity * * * **3 a** : great, unmeasured or *unlimited* in amount, quantity, time, or extent * * *."

*Webster's Third New Int'l Dictionary* 97 (unabridged ed 2002) (emphases added). Those definitions demonstrate that the term "any" is broadly inclusive, a fact that Oregon appellate courts have historically recognized. *See, e.g., Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985) (use of the term "any aircraft" as opposed to simply "aircraft" was intended to give an insurance policy's exclusion clause a broad meaning); *Oregon State Denturist Assn. v. Board of Dentistry*, 172 Or App 693, 702, 19 P3d 986 (2001) (the legislature's use of the article "any" indicated an intent that the definition be "broadly inclusive"). Accordingly, we conclude that "any official proceeding"—without any express time limitation—includes potential future proceedings.

Had the legislature intended a narrower meaning, it could have limited the statute's applicability to some subset of official proceedings. For example, the physical evidence tampering statute, enacted with ORS 162.285 as part of the

same article of the 1971 Criminal Code revision, prohibits destroying, falsifying, or otherwise altering physical evidence with an intent that it "be used, introduced, rejected or unavailable in an official proceeding *which is then pending or to the knowledge of such person is about to be instituted.*" ORS 162.295(1) (emphasis added). When the legislature includes a term in one statute but omits it in another, we infer that its omission is purposeful. *Emerald PUD v. PP&L*, 302 Or 256, 269, 729 P2d 552 (1986). We conclude that, as used in ORS 162.285(1)(a), the term "any" demonstrates the legislature's intent to reach "every" official proceeding, including those that are not currently pending or about to be instituted, but which may occur in the future. Contrary to defendant's contention, nothing in the statute limits its applicability to pending official proceedings, and we must interpret statutes as they are written. ORS 174.010.

Even if we were to conclude that the statute is ambiguous, that would not help defendant. The legislative history does not offer guidance about whether an official proceeding must be pending when a defendant tampers with a witness or potential witness. The history does address the statute's purpose in more general terms. The commentary to the witness tampering statute states that the law "prohibits another form of improper conduct involving witnesses" and, as compared to statutes concerning witness bribery, "covers instances where a witness is induced by other means to testify falsely or to disobey legal process." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 203, 202 (July 1970). The commentary also explains that persuading a witness to invoke a privilege not to testify or inducing a witness to avoid process would *not* constitute witness tampering. *Id.*

The legislature chose to prohibit tampering with "a witness or a person the person believes may be called as a witness in any official proceeding" after it considered a Model Penal Code (MPC) provision prohibiting tampering with "a witness or informant" by a defendant who "believ[es] that an official proceeding or investigation is pending or about to be instituted"; a New York statute prohibiting tampering when a defendant "know[s] that a person is or is about to be called

as a witness in an action or proceeding"; and a Michigan statute prohibiting tampering with "a witness or a person he believes is about to be called as a witness in any official proceeding." *See* Criminal Law Revision Commission, Proposed Oregon Criminal Code, Preliminary Draft No 2, Art 24, § 7, 38-39 (Dec 1969) (setting forth text of the MPC, New York, and Michigan statutes).

In contrast to those provisions, in ORS 162.285(1), the legislature chose to prohibit tampering when a defendant tampers with someone who he *believes may be called* as a witness. That choice suggests a focus on the defendant's intention to interfere with official factfinding processes, regardless of whether the person is ever actually called as a witness. In that respect, the statutory formulation is broader than the other versions. The MPC and New York versions focused on tampering with a witness (or, in the MPC, an informant) in a proceeding that is pending or is about to be instituted; those versions presumably would require that the person tampered with actually be a witness or informant. The Michigan version, although closer to the Oregon statute, is limited to a witness who has been called or who the defendant believes is *about* to be called. Although that legislative history does not conclusively show that the legislature intended to prohibit tampering in prospective proceedings, it suggests that the legislature intended to reach cases in which a defendant acts under a mere belief that a witness may be called upon to testify.

The legislative history does not resolve the statutory construction question, but it does aid our understanding when we resort to the third level of statutory analysis and apply maxims of statutory construction. *See PGE*, 317 Or at 612. At that level, we attempt to determine the legislature's probable intention if it had considered the issue. *Carlson v. Myers*, 327 Or 213, 226, 959 P2d 31 (1998). In light of the broad wording of the statute—which prohibits conduct not only against a witness but also against a person who the defendant "believes may be called as a witness in any official proceeding"—and in light of the legislature's apparent intention to protect the integrity of official factfinding processes, we conclude that the legislature would have intended to

include situations in which an official proceeding was not yet pending.

On this record, we conclude that a reasonable jury could find that defendant believed that Steller might be called as a witness in an official proceeding, although no such proceeding was currently pending. Steller had knowledge connecting defendant to the stolen ATVs: She had seen them in his possession, and he had represented them as his own and had given her the use of one. When Steller confronted defendant and he admitted to having stolen the ATVs, she informed him that she intended to report him, and he made very determined efforts to dissuade her from reporting the thefts. A jury could reasonably infer that defendant believed that, if Steller reported the thefts, he would likely be prosecuted and she likely would become a witness in that prosecution and would be called on to testify consistently with that report. Accordingly, the jury could conclude that defendant believed that Steller might be called as a witness in an official proceeding.

We turn next to defendant's contention that he did not induce or attempt to induce Steller to "unlawfully withhold any testimony" within the meaning of the statute, but rather to prevent her from making a report to the police. The root of the adverb "unlawfully" is the adjective "unlawful," which means "not lawful : contrary to or prohibited by law : not authorized or justified by law : not permitted or warranted by law." *Webster's* at 2502. The verb "withhold" means to "desist or refrain from granting, giving, or allowing : keep within one's possession or control." *Webster's* at 2627. Those definitions indicate that the term "unlawfully withhold" refers to a legally unwarranted refusal to give "testimony." As pertinent here, the term "testimony" refers to "oral or written statements that may be offered by a witness in an official proceeding." ORS 162.225(5). As we have indicated, an "official proceeding" is "a proceeding before any judicial, legislative or administrative body or officer, wherein sworn statements are received." ORS 162.225(1). When the meanings of those terms are analyzed together, it is apparent that ORS 162.285(1)(a) prohibits inducing or attempting to induce a potential witness to refuse, without legal justification, to provide sworn statements in any official proceeding.

Although defendant's threats ostensibly were directed at Steller's stated intention to make a police report rather than to give "testimony" within the meaning of the statute, a reasonable jury could infer that his actions likewise were intended to persuade Steller to unlawfully withhold testimony in a possible future official proceeding involving a prosecution for theft of the ATVs. Although Steller had no duty to report defendant to the police, the jury reasonably could infer that following such a report, Steller likely would be required to give "testimony"—that is, an oral or written statement in a proceeding before a judicial body wherein sworn statements are received. The substance of the report that Steller intended to make to the police—that defendant had stolen property in his possession and had confessed his role in its theft to her—was likely to be the subject of such testimony. For example, Steller could be required to provide testimony before a magistrate considering whether to issue a search warrant, before a grand jury, or at trial. A jury accordingly could infer that defendant's threats extended to such testimony and that defendant sought to induce or attempt to induce Steller to unlawfully withhold such testimony.

Affirmed.