Argued and submitted January 14, decision of Court of Appeals and judgment of circuit court affirmed July 30, 2009

STATE OF OREGON,
*Respondent on Review,*

*v.*

JON NORMAN BERG,
*Petitioner on Review.*

(CC 05C42989; CA A129341; SC S056267)

213 P3d 1249

Bronson D. James, Deputy Public Defender, Salem, argued the cause for petitioner on review. The brief was filed by Eric Johansen, Senior Deputy Public Defender, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Pamela J. Walsh, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

GILLETTE, J.

**GILLETTE, J.**

This case is a companion to *State v. Bailey*, 346 Or 551, 213 P3d 1240 (2009), decided this date. As does the defendant in *Bailey*, defendant in this case challenges his conviction for "tampering with a witness," ORS 162.285(1)(a), on the theory that that statute applies only when an official proceeding is pending at the time of the tampering conduct—a circumstance that the state did not and could not prove in this case. Today, in *Bailey*, we reject that interpretation of ORS 162.285(1)(a). In that case, we hold that the state can prove a violation of the statute by showing that the defendant believed that the person in question might be called as a witness in a potential future official proceeding and knowingly attempted to induce him or her either to testify falsely or unlawfully withhold testimony. *Bailey*, 346 Or at 564. Accordingly, all that remains in this case is to determine whether the evidence presented at trial was sufficient to establish those elements. We conclude that it was and, therefore, affirm.

Defendant was charged with tampering with a witness and stalking, ORS 163.732, based on allegations that he had repeatedly trespassed on his neighbors' property, engaged in aggressive and offensive conduct toward them, and threatened one of them with various consequences if she "showed up in court." At trial, the state presented the testimony of the neighbors (a woman and her mother), and two local police officers. Collectively, their testimony established that, on numerous occasions between September 2004 and March 2005, defendant's neighbors had called the police to report trespassing and other offensive conduct by defendant. At least initially, those calls to the police often did not result in any action and, on September 26, 2004, the neighbors filed stalking and criminal trespass complaints against defendant. Defendant was arrested, but the stalking complaint was dismissed a few days later for lack of evidence. After that, one of the neighbors began to keep track of the comings and goings at defendant's home, writing down license plate numbers and taking photographs of his visitors, in an effort to "build a case" against defendant.

The neighbor specifically testified about threats that defendant and a friend had made to her on January 25, 2005. She testified that, on that day, a friend of defendant's, who was otherwise unknown to her, approached her and told her that he was going to court with defendant on the seventh of February and that he was going to tell the judge that the neighbor had been on defendant's property the night before. The man told her that "he would make sure that I didn't show up to court, and if he couldn't take care of me, then he would have his friend * * * come down and take care of me." Later that same day, the neighbor saw the same man with defendant on defendant's front porch, and, immediately thereafter, as she was walking to her mailbox, the man approached her and made the same threat that he had made before—that "he would take care of me so that I would not show up to court." The neighbor then testified that, as she headed back from her mailbox, defendant approached her himself and told her that "either he or his friend would make sure that I never made it to court to testify against him," that he would break in to her house and rape her and beat her, and that "he would have somebody take care of the brake lines on my car, cut them; that one way or another I was not going to make it to court to testify." Although the reported threats all mentioned anticipated testimony in court, there is no evidence in the record of any judicial proceeding against defendant at the time of the threats. However, the record does contain some mention of defendant's arraignment on a criminal trespass charge on February 10, 2005, a parole violation proceeding against him on April 26, 2005, and the successful initiation of a second stalking complaint against defendant on March 29, 2005.

Indisputably, a reasonable factfinder could infer from the foregoing evidence that defendant believed that the neighbor might be called as a witness in a "court"—in an "official proceeding"[1]—and that his threats against the neighbor, whether he made them personally or through an intermediary, were calculated to induce her to disregard or otherwise

---

[1] ORS 162.225(2) defines the phrase "official proceeding" as follows:

" 'Official proceeding' means a proceeding before any judicial, legislative or administrative body or officer, wherein sworn statements are received, and includes any referee, hearing examiner, commissioner, notary or other person taking sworn statements in connection with such proceedings."

refuse to comply with any such call—that is, to unlawfully withhold testimony. Although there is no evidence in the record that any official proceeding against defendant actually existed at the time of the threats, our decision today in *Bailey* establishes that no such evidence is required. In short, the evidence was sufficient to support a conviction for tampering with a witness under ORS 162.285(1)(a). The Court of Appeals was correct in so holding. *State v. Berg*, 220 Or App 442, 186 P3d 325 (2008).

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.