Argued and submitted January 14, decision of Court of Appeals reversed; judgment of circuit court affirmed in part and reversed in part, and case remanded to circuit court for further proceedings July 30, 2009

STATE OF OREGON,
*Respondent on Review,*

*v.*

KENNETH WAYNE BAILEY,
*Petitioner on Review.*

(CC 200406042A; CA A126255; SC S056152)

213 P3d 1240

Bronson D. James, Chief Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defender Services.

Pamela J. Walsh, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Rankin Johnson IV, Portland, filed a brief for *amicus curiae* Oregon Criminal Defense Lawyers Association.

GILLETTE, J.

GILLETTE, J.

This is one of two cases that we decide today involving a defendant's challenge to a conviction under ORS 162.285 for "tampering with a witness." Both cases involve the same analytical question: Can a person commit the crime of "tampering with a witness," under ORS 162.285(1)(a), which involves inducing "a witness or a person the person believes may be called as a witness in any official proceeding" to withhold testimony, when no "official proceeding" is pending at the time of the inducement? In this case, the Court of Appeals concluded that ORS 162.285(1)(a) does *not* require that an official proceeding be pending at the time of the "tampering" conduct. *State v. Bailey*, 219 Or App 526, 530-34, 183 P3d 232 (2008). For the reasons set out below, we agree with the Court of Appeals' interpretation of the statute in that respect. However, because we disagree with the Court of Appeals' conclusion that the evidence was sufficient to support defendant's conviction under that interpretation, we reverse the court's decision on that ground.

Defendant was charged with witness tampering based on threats that he made to his daughter after she told him that she intended to call the police to report that defendant had in his possession some all terrain vehicles (ATVs) that he had stolen.[1] At trial, defendant's daughter testified that, on January 9, 2004, when she first told defendant of her intentions, he warned her that if she "made the call * * * he was going to kill [her] and that [it] would be the stupidest thing [she] could ever do in [her] life." The daughter also testified that, immediately after making that initial threat, defendant left a message on her cell phone answering service. The prosecutor played that message for the jury. In it, defendant warned his daughter that, "if you make fucking phone calls starting the bullshit, it'll be the last phone call you fucking make." Defendant's daughter also testified that, on the same day that defendant made the forgoing threats, she "went down * * * and had a restraining order put on him."

---

[1] Defendant also was charged with one count of first-degree aggravated theft, ORS 164.057, five counts of unauthorized use of a vehicle, ORS 164.135, one count of first-degree theft, ORS 164.055, and five counts of possession of a stolen vehicle, ORS 819.300. None of those charges is at issue in the case as it comes to us.

In support of the witness tampering charge, the prosecutor played recordings of several other messages that defendant had left on his daughter's answering service in the days following the original (January 9, 2004) threats. In one, defendant seemed to be clarifying his earlier phone message: "I didn't threaten to fucking kill you. * * * What I said was, * * * I'll cut off your fucking phone service—in fact, it's now cut off." In that same message, defendant made several references to things that his daughter had said or should say to "the court." He asked his daughter "how [she] could * * * go in there and lie to the court and tell them shit like that," and then instructed her to

> "be sure you keep this recording and take it to the court and let them hear it. 'Cause there's nothing in there that threatens your life. It said, 'It'll be the last phone call you make, [because] I'll shut off your phone.' You're pretty stupid.
>
> "I hope you get fired. I hope you lose your car. I hope you lose your whole fucking life. See ya. You know where I'll be if you ever want to talk about things. But you're done. You—you just made the biggest mistake you could ever fucking make. Bye."

In yet another message, defendant reminded his daughter that her neighbors had seen one of the ATVs at her house and likely thought it was hers. Defendant then suggested that his daughter had "lied to the court" about living in an apartment and buying a trailer, reminded her that he had been paying her taxes and car insurance, and suggested that someone who did those things would hardly be considered abusive toward her. He added,

> "We'll go on to court. I'll tell them about your restraining order. When the judge sees how much you lied, then when everybody goes to court, with me against you and your restraining order gets dropped, you're going to think twice about what you were doing. Or you could pull your head out of your ass, go back down to the court and drop your stupid restraining order."

In another message, defendant told his daughter that he would be "sure to tell [the court]" about an apparently unsuccessful attempt to get a restraining order against "Jerry." In yet another message, defendant advised his

daughter that he was going to help her ex-husband gain custody of the daughter's child. And in a final telephone message, defendant warned that "you'll be homeless Monday morning if you make that phone call."

At the close of the trial, defendant moved for a judgment of acquittal on the witness tampering charge. The trial court denied the motion and the charge then went to the jury. Defendant ultimately was found guilty of witness tampering, along with other crimes relating to the stolen ATVs and other stolen vehicles.

Defendant appealed, arguing that he was entitled to a judgment of acquittal on the witness tampering charge. Defendant pointed out that the relevant part of ORS 162.285(1)(a) defines witness tampering in terms of "induc[ing] or attempt[ing] to induce a witness or a person the person believes may be called as a witness *in any official proceeding to * * * unlawfully withhold any testimony.*" (Emphasis added.) Defendant asserted that the statute requires that an official proceeding be pending at the time of the tampering conduct and noted that the statements and messages that the state relied on to prove its case occurred long before any "official proceeding" ever was contemplated. Defendant also argued that the statements were directed at stopping his daughter from speaking with police, and were in no way concerned with testimony in any official proceeding.

The Court of Appeals was not persuaded. It concluded that, to the extent that ORS 162.285(1)(a) applies when a defendant "believes" that the other person "may be called as a witness in *any* official proceeding" (emphasis added), it does not require that an official proceeding be pending at the time of the tampering conduct. *Bailey*, 219 Or App at 530-34. The Court of Appeals also concluded that, although defendant's threats ostensibly were directed at his daughter's intention to make a police report about the stolen ATVs, a reasonable jury could infer that they also were directed at coercing her into withholding testimony in any criminal proceeding that might arise out of her report. *Id.* at 535.

Before this court, defendant renews his argument that witness tampering under ORS 162.285(1)(a) occurs only

when an official proceeding is pending at the time of the "tampering" conduct. To assess the validity of defendant's argument, we must interpret the witness tampering statute—a task that involves application of the interpretive paradigm set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P3d 1143 (1993), as modified by subsequent amendments to ORS 174.020 and this court's recent interpretation of that statute in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). According to that paradigm, we first examine the text and context of the statute and then proceed to any relevant legislative history that the parties have offered, giving that history such weight, if any, as it appears to merit. *Gaines*, 346 Or at 171-72.

■ ORS 162.285(1) provides:

"A person commits the crime of tampering with a witness if:

"(a) The person knowingly induces or attempts to induce a witness or *a person the person believes may be called as a witness in any official proceeding* to offer false testimony or unlawfully withhold any testimony; or

"(b) The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned."

(Emphasis added.)

There is no contention that defendant's daughter had been legally summoned to any official proceeding or that defendant could be found guilty of tampering with a witness under paragraph (b) of ORS 162.285(1). We therefore focus our analysis on paragraph (a) and, particularly, on the phrase "a person [whom] the person believes may be called as a witness in any official proceeding."

Taken by itself, one could read that phrase in the way that defendant suggests. A reader could conclude that the verb "believe" has a single, simple object—the person's status as a witness—and that the present existence of an official proceeding is an element that the state must prove, whether the person actually has been designated as a witness, or only is believed to be a potential witness, at that proceeding. Of course, because of the ordering of the words, a

reader would be *more* likely to suppose that the phrase "in any official proceeding" merely modifies the phrase that precedes it, describing the sort of witness ("a witness in any official proceeding") that the defendant must believe that the other person now is or may become. But our sense that that latter interpretation is a more natural reading of the words does not mean that that interpretation necessarily is the correct one. The fact remains that both readings of the words are grammatically and logically plausible.

The parties each point to different words in the provision that, in their view, show that one or the other meaning was intended. Defendant contends that the reference in ORS 162.285(1)(a) to "unlawfully" withholding testimony establishes that the statute requires a pending official proceeding. He insists that withholding testimony can be "unlawful" only in the context of an actual official proceeding—as, for example, when a person is subpoenaed in the course of a proceeding and refuses to obey that subpoena. Thus, defendant argues, the crime of witness tampering can only occur when an official proceeding already is pending.

However, we agree with the state that, in this context, the term "unlawfully" primarily conveys the legislature's intention not to criminalize attempts to induce a person to exercise a *lawful* right or privilege not to testify.[2] Because such rights and privileges may exist in the abstract, and do not depend on the actual existence of an official proceeding, the use of the term "unlawfully" would seem to do little to clarify the legislature's intent with regard to the issue before us.

The state, for its part, argues that the legislature's intent is made clear by the use of a different word—the word

---

[2] The commentary to the final draft of the Oregon Criminal Code of 1971 confirms that point:

"It is not a violation of the section to persuade a witness to lawfully refuse to testify on grounds of personal privilege or to induce a witness to avoid process by leaving the jurisdiction of the court. The latter conduct, if engaged in by an attorney, may raise certain ethical questions, but should not be subject to criminal liability since neither the means used nor the end sought is independently unlawful."

Oregon Criminal Law Revision Commission, *Proposed Oregon Criminal Code, Final Draft and Report* § 203, Commentary (A) (July 1970).

"any" in the phrase "any official proceeding." As noted, the Court of Appeals agreed with the state on that point: After observing that the word "any" is broadly inclusive, it concluded that, in the absence of an express time limitation, the reference to "any official proceeding" must include potential future proceedings within its sweep. 219 Or App at 531. Defendant contends, however, that, in the context of ORS 162.285(1)(a), the word "any" refers to any *type* of "official proceeding," as that term is defined in ORS 162.225(2),[3] and not to every possible official proceeding, including future and potential ones. The "context" that defendant points to are the "facts" that ORS 162.225(2) defines the term "official proceeding" in terms of "types" of proceedings and that ORS 162.285(1)(a) is phrased conditionally. In regard to the latter point, defendant focuses on one of several definitions of the term "any" that appear in *Webster's Third New Int'l Dictionary* 97 (unabridged ed 2002):

> "One, or another: this, that, or the other—used as a function word, esp. in interrogative and conditional expressions to indicate that one that is not a particular or definite individual of the given category but whichever one chance may select."

We think that defendant invests far more nuance into the construction of ORS 162.285(1)(a) than is warranted. For one thing, although the definition at ORS 162.225(2) provides that certain types of proceedings are *included* within the definition of "official proceeding," the definition itself is not simply a listing of types. Moreover, although it is true that ORS 162.285(1)(a) uses a conditional format ("[a] person commits the crime of tampering with a witness *if*"), there is nothing in that statute that otherwise suggests a limitation to or focus on a defined group of types of proceedings.

We are persuaded that a better approach to analyzing the text of ORS 162.285(1)(a) is to stop dissecting the provision and, instead, to read it as a completed thought. That

---

[3] ORS 162.225(2) defines "official proceeding" as "a proceeding before any judicial, legislative or administrative body or officer, wherein sworn statements are received, and includes any referee, hearing examiner, commissioner, notary or other person taking sworn statements in connection with such proceedings."

subsection speaks of "a person" who is "a witness" or whom the offender "believes may be called as a witness in any official proceedings." Read most sensibly, the transitive verb "believes" has as its object the entire phrase that follows it, *viz.*, "may be called as a witness in any official proceeding." So read, the subsection is expansive and all-inclusive—it speaks to proceedings that may or may not commence in the future as well as to proceedings now underway. Moreover, the subsection uses both the relatively narrow term "witness" and the far broader term "person" when it describes whom an offender may not "induce[ ] or attempt[ ] to induce." That shows that the legislature contemplated two groups, one of which, "persons," is very expansive. Considering all those signals together, we conclude that the statutory prohibition extends to proceedings that may be (but have not yet been) commenced.

Defendant nonetheless argues that we must read ORS 162.285(1)(a) *in pari materia* with surrounding statutes defining other general obstruction-of-justice crimes, all of which were adopted together as Article 24 of the 1971 Oregon Criminal Law Revision. Defendant points to ORS 162.265, defining the crime of bribing a witness, and ORS 162.275, defining the crime of receipt of a bribe by a witness, as particularly relevant, because they use similar, albeit not identical, wording. ORS 162.265(1) provides:

> "A person commits the crime of bribing a witness if the person offers, confers or agrees to confer any pecuniary benefit *upon a witness in any official proceeding, or a person the person believes may be called as a witness*, with the intent that [the person's testimony be influenced, the person avoid legal process or the person be absent from official proceeding to which the person has been legally summoned.]"

(Emphasis added.) Similarly, ORS 162.275(1) provides:

> "A *witness in any official proceeding, or a person who believes the person may be called as a witness*, commits the crime of bribe received by a witness if the person [solicits, accepts, or agrees to accept any pecuniary benefit with the understanding that the person's testimony will be influenced, the person will avoid legal process, or the person will

be absent from any official proceeding to which the person has been summoned]."

(Emphasis added.)

Defendant observes that the italicized wording in those statutes essentially duplicates the relevant wording in ORS 162.285(1) ("a witness or a person the person believes may be called as a witness in any official proceeding"), and that the only differences—a slight reordering of the words and the inclusion of internal commas separating the subordinate clauses—are not the sort of differences that suggest that a different meaning was intended. Defendant then contends that, in the context of the "bribing a witness" and "bribe received by a witness" statutes, it is obvious that the wording at issue refers to a *pending* official proceeding. Defendant argues, finally, that the similar wording in ORS 162.285(1)(a) must be read to mean the same thing, *i.e.*, as applying only when an official proceeding is pending.

But it is not immediately obvious to us that the differences in the wording and punctuation of the witness tampering and witness bribery statutes are insignificant or that those statutes necessarily require a pending proceeding. In particular, the commas that set off the phrases, "or a person the person believes may be called as a witness," and "or a person who believes the person may be called as a witness," suggest (by their use of the word "person") that each phrase speaks expansively to a class of persons larger and in addition to the class of persons who already are witnesses. In fact, were we called on to address the question, we might conclude that the commas in question only make clearer the interpretation that we have ascribed to ORS 162.285(1)(a). Certainly, the commas do not forward defendant's cause: Contrary to defendant's view, the witness bribery statutes *can* support an interpretation that would criminalize bribes offered to or received by a person "who [a] defendant thinks that someday, somewhere, somehow, might testify in some formalized setting."

The state's contextual argument is more persuasive. It points, first, to the paragraph of ORS 162.285(1) that follows the one that it is at issue. ORS 162.285(1)(*b*) sets out the *other* way that a person may commit the crime of tampering

with a witness, *viz.*, by "knowingly induc[ing] or attempt[ing] to induce a witness to be absent from any official proceeding *to which the person has been legally summoned.*" As the state observes, the italicized part of paragraph (b) *expressly* conveys the legislature's intent to limit that paragraph's application to circumstances where an official proceeding is pending. In light of the inclusion of that wording in paragraph (b), it is reasonable to assert that the absence of similar wording in paragraph (a) signals an intent that paragraph (a) *not* be similarly limited.

The state also points to another statute, ORS 162.295, as helpful context. That statute, which defines the crime of "tampering with physical evidence," is perhaps the one that is most closely related to ORS 162.285.[4] It provides, in part:

> "(1)   A person commits the crime of tampering with physical evidence if, with intent that it be used, introduced, rejected or unavailable *in an official proceeding which is then pending or to the knowledge of such person is about to be instituted*, the person

> "(a)   Destroys, mutilates, alters, conceals or removes physical evidence impairing its verity or availability; or

> "(b)   Knowingly makes, produces or offers any false physical evidence; or

> "(c)   Prevents the production of physical evidence by an act of force, intimidation or deception against any person."

(Emphasis added.)

The emphasized part of ORS 162.295(1) leaves no doubt as to the necessity and timing of an official proceeding. That statute expressly provides that an official proceeding must be pending at the time of the tampering conduct or that, in the alternative, the person charged with tampering must know that an official proceeding is *about* to be instituted.

---

[4] ORS 162.285 and ORS 162.295 are related not only by proximity in the Oregon Revised Statutes, but by history and subject matter. Both were adopted as part of the Criminal Code of 1971, and appear in the same article (Article 24—Obstructing Governmental Administration). Both pertain to similar "obstruction of justice" conduct, *i.e.*, "tampering."

The question becomes, in light of that clear expression of legislative intent in ORS 162.295(1), what are we to make of the fact that, in ORS 162.285(1)(a), the legislature did not include any similar wording restricting the crime of witness tampering to circumstances in which an official proceeding is pending or about to be instituted? Generally, when the legislature includes an express provision in one statute and omits the provision from another related statute, we assume that the omission was deliberate. *See Emerald PUD v. PP&L*, 302 Or 256, 269, 729 P2d 552 (1986) (when legislature amended one provision in electric power statute to add public utility districts to list of entities entitled to license preference and did not amend another similar provision in the same manner, court inferred that the omission was deliberate and that legislature did not intend to include public utility districts in ambit of latter statute). Although the absence of any express reference to "pending" proceedings in ORS 162.285(1)(a) is less definitive than the omitted wording in *Emerald PUD*, it nevertheless is further support for the view that ORS 162.285(1)(a) does not require that an official proceeding be pending at the time of the tampering conduct. On balance, we find the more expansive view of the scope of the prohibition in ORS 162.285(1)(a) to be the more natural and logical one.

That said, we proceed to an examination of legislative history for any additional clues, beyond the statute's text and context, as to what the legislature intended. Unfortunately, that history is not very revealing. All that is relevant and available is set out in the Court of Appeals opinion, 219 Or App at 532-33. As that opinion observes, early drafts of the 1971 Criminal Law Revision (of which ORS 162.285 was a part) show that the Criminal Code Revision Commission looked at witness tampering statutes from three different sources—the New York Penal Code, the Michigan Penal Code, and the Model Penal Code—when it drafted ORS 162.285. Oregon Criminal Law Revision Commission, *Proposed Oregon Criminal Code, Preliminary Draft No 2*, Article 24, § 7, 38-39 (Dec 1969). By the time that the commission adopted its final draft of the revised criminal code, it would state that the Oregon provision was derived from only two sources: New York Revised Penal Law § 215.10 and

Model Penal Code § 241.6. Oregon Criminal Law Revision Commission, *Proposed Oregon Criminal Code, Final Draft and Report* § 203, Commentary (B) (July 1970). The New York provision, *former* New York Penal Code § 215.10, provided that a person commits the crime of witness tampering when the person, "knowing that a person is or is about to be called as a witness in an action or proceeding, * * * wrongfully induces or attempts to induce such person [to avoid appearing or testifying]." The Model Penal Code provision, § 241.6, provided that a person commits a criminal offense if, "believing that an official proceeding or investigation is pending or is about to be instituted, he attempts to induce or otherwise cause a witness or informant to * * * withhold any testimony." As far as we are able to tell, there is no historical record of the commission's discussions of the relative merits of those statutes or the Michigan statute.

Defendant argues that it is significant that the revision commission did not adopt the phrasing of the Model Penal Code, which explicitly pertains when the person at issue believes that "an official proceeding *or investigation* is pending *or is about to be instituted.*" Defendant suggests that, by omitting those italicized phrases, the revision commission signaled an intention that the Oregon statute *not* apply to tampering at or before the investigation stage. However, it would seem to be just as significant, if not more so, that the statutes that the revision commission used as models both contain a more focused description than does ORS 162.285(1)(a) of the possible timing of the testimony being tampered with, and that one—the New York statute—quite clearly excludes tampering conduct that occurs at a time when no official proceeding is being contemplated.[5] If anything, the fact that the revision commission proposed, and

---

[5] For example, by providing that witness tampering pertains when a defendant *knows* that a person is *or is about to be* called as a witness in a * * * proceeding" (emphasis added), the New York statute clearly excludes from the definition of witness tampering all circumstances where a proceeding is only a mere future possibility. Similarly, the Model Penal Code excludes circumstances where the defendant does not know or believe that an official proceeding is pending or imminent. And even the Michigan statute excludes circumstances in which an official proceeding is only a distant possibility: the defendant must believe that the person at issue is "about to be called" as a witness in an official proceeding.

the Oregon legislature adopted, a witness tampering provision that does *not* contain any of the narrowing wording of the New York and Model Penal Code provisions suggests that the legislature intended that the Oregon statute apply more broadly.

Although no single piece of the analytical framework that we have described is decisive by itself, we think that all the considerations the state relies on collectively are persuasive. The concern that the revision commission and the legislature showed toward maintaining the integrity of official proceedings justifies the conclusion that they meant to punish conduct that was based on the offender's reasonable belief that a proceeding either was underway or might commence in the future. Accordingly, we hold that, when ORS 162.285(1)(a) defines witness tampering in terms of tampering with a person who the defendant "believes may be called as a witness in any official proceeding," it includes tampering that occurs at a time when no official proceeding is pending.

■　Having reached the foregoing conclusion about the meaning of ORS 162.285(1)(a), we turn to the statute's application to the evidence that was before the jury. In the Court of Appeals, defendant argued that, although there may have been evidence in the record showing that he had attempted to deter his daughter from reporting his possession of stolen ATVs to the police, that evidence would not support a finding that he had attempted to induce his daughter to "unlawfully withhold any testimony." The Court of Appeals disagreed, and explained its conclusion in the following terms:

> "Although defendant's threats ostensibly were directed at [the daughter's] stated intention to make a police report rather than to give 'testimony' within the meaning of the statute, a reasonable jury could infer that his actions likewise were intended to persuade [the daughter] to unlawfully withhold testimony in a possible future official proceeding involving a prosecution for theft of the ATVs. Although [the daughter] had no duty to report defendant to the police, the jury reasonably could infer that following such a report, [the daughter] likely would be required to give 'testimony'—that is, an oral or written statement in a proceeding before a judicial body wherein sworn statements

are received. The substance of the report that [the daughter] intended to make to the police—that defendant had stolen property in his possession and had confessed his role in its theft to her—was likely to be the subject of such testimony. For example, [the daughter] could be required to provide testimony before a magistrate considering whether to issue a search warrant, before a grand jury, or at trial. A jury accordingly could infer that defendant's threats extended to such testimony and that defendant sought to induce or attempt to induce [the daughter] to unlawfully withhold such testimony."

*Id.* at 535.

■      We disagree with that analysis, because it sweeps too broadly. Under that analysis, for example, *any* attempt to dissuade a person from reporting a crime would turn into a tampering offense, simply because it always is possible that a report of a crime will lead to a prosecution and that the person who made the report will become a witness. Nothing in the statute's wording or its legislative history suggests that its scope extends *that* far. We hold, instead, that, to constitute a violation of the statute, the offender's knowing inducement or intended inducement must reflect, either directly or by fair inference, that the offender at that time specifically and reasonably believes that the victim will be called to testify at an official proceeding.

Our formulation of the statutory test illustrates where we think the Court of Appeals went wrong in the foregoing quotation. Much of what the Court of Appeals sets out as permissible "inferences" pertains to what defendant's daughter eventually might be called upon to do, rather than to what defendant reasonably might be deemed to have had in mind at the moment that he made the threats. The court's chain of "inferences" demonstrates how one can speculate that defendant might have been thinking ahead to a possible future proceeding. But more than speculation is needed for this purpose. It must be reasonable for a jury to conclude—and to conclude beyond a reasonable doubt—that, when defendant was warning his daughter against going through with the specific and imminent action *that she had threatened*—going to the police—he also specifically had in mind

the remote-in-time prospect that she might be called to testify in a criminal proceeding against him that could arise out of her report to the police.

In our view, such a conclusion would not have been reasonable. By their terms, most of defendant's threats were directed solely and specifically at his daughter's stated intention to call the police. Defendant's threats to kill his daughter, to assist in taking away her child, and to cut her off financially if she "ma[d]e that call" simply cannot, in that context, be interpreted as reflecting defendant's knowing attempt specifically to induce his daughter not to testify in a possible future criminal proceeding against defendant.[6]

The state suggests that there is an additional basis for inferring that defendant's threats were directed toward inducing his daughter to withhold testimony from a future court proceeding—the fact that he "mentioned future court proceedings while making those threats." The state acknowledges that some of those comments about future proceedings appeared to be directed at the restraining order that his daughter had obtained, but it contends that others "could be reasonably construed to apply to a more expansive range of potential court proceedings." But we find no room for such a construction in the transcript of defendant's phone messages. In fact, whenever defendant mentioned a future transaction with "the court" in those phone messages, it is clear from context, if not from defendant's express words, that defendant was referring to proceedings connected with his daughter's application for a restraining order. It also is clear that, although defendant may have been insulted by those proceedings and wanted her to drop them, he was not attempting to induce her to "unlawfully withhold testimony" in them.

Only one of defendant's statements arguably supports the state's position. As noted, defendant told his daughter that, "if you make fucking phone calls [to the police] starting the bullshit, it'll be the last phone call you fucking make." Even that call, however, involved threatened consequences

---

[6] The asserted inference seems particularly inappropriate in that it posits an inducement to commit an *unlawful* act (refusing to testify, or falsely testifying, at a trial) from evidence of an inducement to do something lawful (*i.e.*, not report defendant's crimes).

as a result of the initial contact with the police. What defendant threatens will occur at once; there is no long-term aspect to it that reasonably could be said to extend to some possible future prosecution.

To assist bench and bar in future cases, we spell out the series of inferences that the state must be entitled to have drawn from the evidence to prevail in this case, and note the point at which we believe that that series of inferences became unsustainable:

First, the jury would have to infer that defendant did not want his daughter to inform the police about the stolen ATVs. That inference is easy—indeed, it is inescapable.

Second, the jury would have to infer that, if the daughter made that report, a criminal investigation and (quite possibly) a criminal prosecution would follow. Again, we think that such an inference would be easy to draw. However, the state's case would require at least two further inferences, and those are more problematic.

The third inference that the jury would have to draw would be that defendant believed that his daughter would be a witness in the criminal prosecution that might ensue. That inference may also be permissible, although it is not at all clear that defendant's daughter would be a necessary or even a likely witness. Still, we shall assume that this third inference could be drawn by a reasonable juror.

The fourth and last inference that the jury would have to draw is another matter, however: The jury would have to infer that the threats of retribution that defendant made were intended to induce defendant's daughter not to testify in that hypothetical future criminal prosecution. Given the focus of defendant's statement, we think that that inference simply is speculation. The most that can be said is that defendant threatened immediate consequences if his daughter made a report about the stolen ATVs to the police. Those threats were not about an official proceeding, either explicitly or by permissible inference.

We do not suggest that, on other facts and in a different context, a threat made to someone advising her not to report criminal conduct to the police could not be found by a

jury to have been made in a knowing attempt also to induce the threatened person to withhold testimony in a future criminal trial. We hold only that, on these facts, that inference could not reasonably be drawn. Neither do we suggest that defendant's threats against his daughter may not have violated other criminal statutes. As defendant points out, to the extent that a jury believed that defendant had threatened to kill his daughter if she reported his crimes to the police, he might be criminally liable under ORS 163.275 (coercion) or ORS 166.065 (harassment). But such threats are not "tampering with a witness" within the meaning of ORS 162.285(1)(a), and a reasonable jury, presented with the clearest evidence that defendant had made such threats, still could not find defendant guilty of *that* crime. The Court of Appeals erred in ruling to the contrary.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.