Argued and submitted January 27, conviction on Count 4 for tampering with a witness reversed, remanded for resentencing, otherwise affirmed December 30, 2015, petition for review dismissed February 9, 2016 (358 Or 551)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD KAY WILLIAMS,
*Defendant-Appellant.*

Clatsop County Circuit Court
121100; A154262

365 P3d 1144

Eric Johansen, Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Ronald Kay Williams filed the supplemental brief *pro se.*

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Following a jury trial, defendant was convicted of one count of aggravated theft in the first degree, ORS 164.057; one count of theft in the first degree, ORS 164.055; and one count of tampering with a witness, ORS 162.285.[1] On appeal from the resulting judgment, defendant assigns error to the trial court's denial of his motion for judgment of acquittal on the witness tampering charge. Because we conclude that the evidence presented at trial was insufficient to support a conviction on that charge, we reverse defendant's conviction for witness tampering, remand for resentencing, and otherwise affirm.[2]

Because we are reviewing the denial of a motion for judgment of acquittal, "we state the facts in the light most favorable to the state." *State v. Kaylor*, 252 Or App 688, 690, 289 P3d 290 (2012), *rev den*, 353 Or 428 (2013). Defendant was employed as the director of the Commercial Fisherman's Festival (CFF). During a dispute over defendant's pay, defendant resigned his position, withdrew money from CFF's bank accounts, and took property belonging to the festival and its sponsors. Defendant posted on social media about taking money from CFF, stating that he had done so because the board had not paid him what he was owed.

CFF sent defendant a letter demanding that he return the money and property, signed by Mullenix, the organization's secretary and treasurer, but defendant did not do so. Another board member, Gramson, demanded

---

[1] Under ORS 162.285(1)(a),

"[a] person commits the crime of tampering with a witness if:

"(a) The person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony[.]"

[2] Defendant raises two additional assignments of error—one through counsel, and one in a *pro se* supplemental brief. In his second assignment of error, defendant contends that the trial court erred in imposing an enhanced sentence, pursuant to ORS 137.717, on his theft conviction. He argues that the court impermissibly treated defendant's aggravated theft conviction as a predicate offense for that enhanced sentence. In his *pro se* assignment of error, defendant raises several arguments challenging the trial court's imposition of restitution. We reject those assignments of error without further discussion.

the return of the money and property in a telephone call to defendant. Defendant denied having any CFF property and later posted an account of the phone call on Facebook. In his Facebook post, defendant insulted two CFF board members, Elizabeth McMaster[3] and Mullenix, and the director of the Astoria Sunday Market, Mudge, whom defendant worked with while he was director of CFF.

CFF eventually complained to the police. Astoria Police Officer Aydt obtained and executed a search warrant for defendant's home, vehicles, and storage unit, seizing numerous pieces of CFF property. Elizabeth assisted the police by providing records of defendant's online communications to help them identify and locate the items of property that defendant had taken.

Two weeks after the search warrant was executed, defendant approached Kenneth McMaster. Defendant told Kenneth that the "shit talking" had to stop. Kenneth replied that "the shit talking is a lot coming out of [defendant]" and stated that, with "everything[ that is] going on in the Commercial Fisherman's Festival, and with you, we probably shouldn't be talking right now." Defendant then told Kenneth, "If you don't stop the shit talking, if it doesn't stop, I will burn down your fucking house."

Kenneth believed that Elizabeth was the "culprit" of the "shit talking" and, based on the context of defendant's references, that defendant was referring to statements that Elizabeth had made about defendant on social media. For her part, Elizabeth was "highly involved with social media," she had been involved in disputes with defendant on social media, and Kenneth himself did not "do social media, * * * do Facebook, * * * email, nothing." Kenneth was also aware that Elizabeth had been involved in "providing evidence to the police about this case, from social media." Elizabeth believed that, by "shit talking," defendant meant "[s]aying anything against him, or that painted him in an unfavorable light." She thought that defendant did not want anyone saying anything publicly about the property that he had

---

[3] We refer to Elizabeth McMaster as "Elizabeth" throughout this opinion to avoid confusion with her husband, Kenneth McMaster, whom we refer to as "Kenneth."

taken from CFF. She also thought that "shit talking" could include "providing evidence to the police."

Based on his threat to Kenneth, "If you don't stop the shit talking, if it doesn't stop, I will burn down your fucking house," defendant was charged with two counts of witness tampering, one related to tampering with Kenneth's testimony and one related to tampering with Elizabeth's testimony. Defendant, who waived his right to counsel and represented himself at trial, moved for judgment of acquittal on both witness tampering charges.

The trial court denied the motion, explaining:

> "I think there are two inferences that can be drawn here. One is that statement was made because a search warrant had been served about two weeks before, and it was meant to head people off from testifying or getting involved, or there was a lot of trash talk going on with the Internet, and it was an intention to stop that talking back and forth. But I think either one [is] a reasonable inference that a jury can draw a decision on."

The trial court further explained that, if not for the execution of the search warrant two weeks before the incident, it would likely have granted defendant's motion, but, because defendant was "aware that the search warrant ha[d] been executed, *** it's pretty reasonable to believe that there is going to be a criminal—any kind of proceeding—whether its civil or criminal that's going to take place from that." Defendant was ultimately convicted of the witness tampering charge related to Kenneth and acquitted of the witness tampering charge related to Elizabeth.

On appeal, defendant argues that the trial court erred in denying his motion for judgment of acquittal on the witness tampering charge related to Kenneth. In his view, there was insufficient evidence to show that defendant intended to induce Kenneth not to testify in an official proceeding. Defendant contends that his reference to "shit talking" was clearly to Elizabeth's statements on social media, not to testimony in a future official proceeding, and it would be unreasonable to infer otherwise. The state responds that the evidence shows that defendant had "a legal proceeding in mind" when he threatened to burn down

the McMasters' house. The state points out that, in light of the execution of the search warrant, when he made his threat, defendant was aware that the police were investigating his conduct. The state further argues that defendant was aware that the McMasters were on the CFF board and that they had information about his thefts because of their "online communications." The state, therefore, contends that a jury could reasonably infer that defendant's demand to stop "shit talking" was about more than just social media postings, but also talking to the police and, ultimately, testifying against him at trial.

"We review a trial court's denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the state proved all the essential elements of the offense beyond a reasonable doubt." *Kaylor*, 252 Or App at 691. Although the state may rely on the jury drawing "reasonable inferences" from the evidence to sustain a conviction, "speculation and guesswork are not" permissible. *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). As with other facts necessary for a criminal conviction, any inferred fact must be proved beyond a reasonable doubt. *Id.* at 466.

As noted, pursuant to ORS 162.285(1)(a), a person commits the crime of tampering with a witness if

"[t]he person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony[.]"

An "official proceeding" is defined as "a proceeding before any judicial, legislative or administrative body or officer, wherein sworn statements are received, and includes any referee, hearing examiner, commissioner, notary or other person taking sworn statements in connection with such proceeding." ORS 162.225(2).

In *State v. Bailey*, 346 Or 551, 213 P3d 1240 (2009), the Supreme Court construed ORS 162.285(1)(a), and considered whether the evidence in that case was sufficient for a jury to convict the defendant under that statute. There, the defendant was charged with tampering with a witness

under ORS 162.285(1)(a) based on threats made to his daughter if she reported to the police that he had stolen some all terrain vehicles (ATVs). *Bailey*, 346 Or at 553. He told her that, "'if you make fucking phone calls starting the bullshit [by reporting the theft to the police], it'll be the last phone call you fucking make.'" *Id.* The court concluded that the defendant's threats were not sufficient to sustain a conviction for tampering with a witness. *Id.* at 568.

The court held that, "to constitute a violation of [ORS 162.285(1)(a)], the offender's knowing inducement or intended inducement must reflect, either directly or by fair inference, that the offender at that time specifically and reasonably believes that the victim will be called to testify at an official proceeding." *Id.* at 565. The court explained that it was not reasonable for a jury to find beyond a reasonable doubt that, when the defendant warned his daughter "against going through with the specific and imminent action *that she had threatened*—going to the police—he also specifically had in mind the remote-in-time prospect that she might be called to testify in a criminal proceeding against him that could arise out of her report to the police." *Id.* at 565-66 (emphasis in original).

Based on the evidence presented, the court explained that, to convict the defendant, a jury would have had to draw two obviously permissible inferences—that the defendant did not want his daughter to report the theft of the ATVs to the police and that, if his daughter reported the theft, a criminal investigation and prosecution would follow—and one arguably permissible inference—that the defendant believed that his daughter "would be a witness in the criminal prosecution that might ensue." *Id.* at 567. However, according to the court, a jury would also have had to draw an impermissible fourth inference:

> "The jury would have to infer that the threats of retribution that defendant made were intended to induce defendant's daughter not to testify in that hypothetical future criminal prosecution. Given the focus of defendant's statement, we think that that inference simply is speculation. The most that can be said is that defendant threatened immediate consequences if his daughter made a report about the stolen

ATVs to the police. Those threats were not about an official proceeding, either explicitly or by permissible inference."

*Id.* Accordingly, the court concluded that the evidence was insufficient to sustain a conviction for witness tampering.

In this case, to decide whether the trial court erred in denying defendant's motion for judgment of acquittal, we must determine whether there was sufficient evidence from which a jury could find, either directly or by permissible inference, that (1) defendant, at the time he told Kenneth that "he would burn down [his] fucking house" if "the shit talking [did] not stop," reasonably believed that Kenneth would be called to testify in an official proceeding, and (2) defendant's threat was intended to induce Kenneth not to testify in that official proceeding. *See id.* at 565-67. Defendant's statements do not directly relate to testimony in an official proceeding. The question becomes what a jury could have permissibly inferred about potential testimony from the evidence in this case.

To draw the first necessary inference, there must be some evidence in the record from which a jury could conclude that defendant reasonably believed that Kenneth would be called to testify in an official proceeding. Here, the state presented no such evidence. There is no evidence that, at the time defendant made the threat, Kenneth had any direct knowledge of defendant's thefts or that defendant had reason to believe that Kenneth was providing any information to the police. Rather, the evidence indicated that Elizabeth, not Kenneth, was providing information to the police. Even if defendant knew or suspected that Elizabeth was cooperating with the investigation, it does not follow that he also believed that Kenneth would be called as a witness in a proceeding against him.[4]

The state nonetheless contends that a jury could infer that defendant believed that Kenneth would be called as a witness against him. In the state's view, that inference

---

[4] We agree with the state that a jury could infer, based on the execution of the search warrant, that, at the time he threatened Kenneth, defendant believed that a criminal prosecution would occur. However, that alone is not sufficient for a jury to infer that defendant reasonably believed that Kenneth would be called as witness in that prosecution.

could be made because defendant knew the McMasters had information about his thefts, obtained through their membership on the CFF board or revealed through the McMasters' online communications.

The fact that Kenneth was a member of the CFF board does not allow a jury to infer that defendant believed that Kenneth had special knowledge about his thefts and would be called as a witness against him because of that. Indeed, unlike other board members, the record does not show that defendant interacted with Kenneth while CFF was attempting to reclaim its property. Unlike other board members, Kenneth did not sign a letter demanding that defendant return CFF's property, or call defendant to demand that property back. Nor did defendant refer to Kenneth in his Facebook post about Gramson's phone call (in contrast to Elizabeth, Mullenix, and Mudge, all of whom he mentioned). A jury could not reasonably infer that defendant believed that Kenneth would be called as a witness in CFF's attempts to reclaim its property based only on his status as a board member.

Furthermore, the "online communications" from which defendant might have learned that the McMasters were aware of his thefts were not made by the *McMasters*, they were made by Elizabeth. Kenneth testified that, although his wife was active on social media, he personally did not engage in any form of online communication ("I don't do social media, I don't do Facebook, I don't email, nothing."). Although Kenneth was aware that Elizabeth and defendant were sparring on social media, that, without more, does not permit a jury to infer that defendant reasonably believed that Kenneth would be a witness based on social media posts written by Elizabeth. Thus, there was no evidence from which a jury could permissibly infer that defendant reasonably believed that Kenneth would be called to testify in a proceeding against him because Kenneth had particular knowledge of defendant's thefts.

There was also no evidence presented in this case sufficient to support the second necessary inference, that defendant's threat was an attempt to induce Kenneth not to testify in an official proceeding. Even if a jury could

permissibly infer that defendant believed that Kenneth had any information relevant to a criminal prosecution—which, as we have explained, it could not—defendant demanded that Kenneth stop doing something that he had already been doing ("stop the shit talking"), not that he refrain from doing something new (withhold testimony in an official proceeding). Here, the most a jury could permissibly infer was that defendant was threatening immediate consequences if Kenneth did not "stop the shit talking." Whether that phrase meant "stop talking to the police" or "stop talking on social media," a jury would have to speculate to conclude that defendant's demand also included a demand to withhold future testimony. *See Bailey*, 346 Or at 567 (where the defendant threatened "immediate consequences if his daughter made a report * * * to the police," a jury could not reasonably infer that "[t]hose threats were * * * about an official proceeding, either explicitly or by permissible inference"); *Kaylor*, 252 Or App at 697 (concluding that it was not reasonable to infer that the defendant's threat to kill her coworker, if the coworker reported the defendant's misconduct to their employer and got the defendant fired, was also an attempt to induce the coworker to withhold testimony in an official proceeding).

In light of the foregoing, we conclude that the state did not present sufficient evidence from which a rational trier of fact could infer that defendant attempted to induce Kenneth to withhold testimony in an official proceeding without "stacking * * * inferences to the point of speculation." *Bivins*, 191 Or App at 468. Therefore, the trial court erred in denying defendant's motion for judgment of acquittal.

Conviction on Count 4 for tampering with a witness reversed; remanded for resentencing; otherwise affirmed.