Argued and submitted August 31, 2011, convictions for first-degree criminal mistreatment and tampering with a witness reversed; conviction for strangulation reversed and remanded October 17, 2012, petition for review denied March 28, 2013 (353 Or 428)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

REBECCA KAYLOR,
*Defendant-Appellant.*

Marion County Circuit Court
08C40689; A140023

289 P3d 290

Ryan T. O'Connor, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jamie K. Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger,

Attorney General, Mary H. Williams, Solicitor General, and Linda Wicks, Assistant Attorney General.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, J., *vice* Rosenblum, S. J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for criminal mistreatment in the first degree, ORS 163.205, strangulation, ORS 163.187, and tampering with a witness, ORS 162.285. On appeal, defendant contends that the trial court erred in denying her motions for judgment of acquittal on the first-degree criminal mistreatment and witness tampering charges. She also contends that the trial court erred in admitting evidence of her prior bad acts, including evidence that she had previously threatened the victim and another person with physical harm. We agree with defendant that the court erred in denying her motions for judgment of acquittal and in admitting evidence of her past statements. Accordingly, we reverse all of defendant's convictions and remand for further proceedings on the strangulation charge.

Because this case arises, in part, from the court's denial of defendant's motions for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Everett*, 249 Or App 139, 140, 274 P3d 297, *rev allowed*, 352 Or 377 (2012). Defendant was working as a certified nursing assistant (CNA) at a nursing home where the victim resided. The victim suffered from dementia and, at times, responded combatively to care. Rivera, another CNA that worked with defendant, testified that she was attending to the victim's roommate when defendant entered the room and began cleaning the victim. Rivera noticed that the victim was resisting care, and, accordingly, she offered to help defendant. Together—with defendant standing near the victim's head and Rivera near his lower body—they rolled the victim over onto his side in order to clean him. At that time, the victim "was yelling" and "hollering" in a "very loud" manner because "he [didn't] like what [they were] doing." Rivera testified that, while she was cleaning the victim, he suddenly became very quiet and that, when she looked up, she saw that defendant had her hand "pushed over his mouth, firmly pushed over his mouth." Rivera explained that she believed that defendant "was applying pressure, because he was bright red in the face. He was wide-eyed. This is a man who doesn't open his eyes, on a general rule." Rivera further testified that defendant's hand was in that position for 10 seconds, that the victim was not holding defendant's hand

in place, and that he "looked terrified," as if he could not breathe. Defendant then told Rivera that the victim had bitten her hand, and she left to tend to her bite wound. Later that day, after seeking advice from Mayes, another CNA, Rivera reported her observations to a supervisor.

The following day, defendant called Mayes and left a voicemail message: "It's 5:11[p.m.] (Inaudible.) If you happen to see [Rivera], tell her she may not want to fucking cross my path because I will kill her fucking ass. Alright, I'll talk to you later. Bye." Minutes later, at 5:25 p.m., defendant sent a text message to Mayes: "So when you see her tell that bitch that I will kill her if I get fired[]." At approximately 5:30 p.m., defendant's supervisor called the police to report possible elder abuse by defendant. A grand jury indicted defendant for first-degree criminal mistreatment, strangulation, and two counts of tampering with a witness.

Before trial, the state moved *in limine* for a ruling on the collective admissibility of "evidence of defendant's prior verbal and physical abuse of residents in her care," arguing that defendant's prior acts were relevant to show her "scheme, plan, her way of dealing with people in her care that presented problems to her." The court ruled that defendant's acts in the six months prior to the alleged crimes were admissible, and, at trial, the state introduced testimony from Rivera and Mayes that defendant had previously verbally and physically abused residents in her care.

After the state rested its case, defendant moved for judgments of acquittal on all counts. The trial court denied all of defendant's motions. The jury found defendant guilty of first-degree criminal mistreatment, strangulation, and one count of witness tampering, and defendant appealed.

We first consider defendant's assignments of error related to the trial court's denial of her motions for judgment of acquittal. We review a trial court's denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the state proved all the essential elements of the offense beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

First, defendant contends that the court erred in denying her motion for judgment of acquittal on the first-degree criminal mistreatment charge. ORS 163.205(1)(a) provides that a person commits that crime if

"[t]he person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person[.]"

The state's theory at trial was that defendant had violated that statute by "withhold[ing] necessary and adequate * * * physical care" from the victim when she failed to remove her hand from his mouth. On appeal, defendant argues that her act of placing her hand over the victim's mouth cannot constitute *"withhold[ing]* necessary and adequate * * * physical care" within the meaning of ORS 163.205(1)(a). (Emphasis added.) Specifically, defendant argues that the legislature intended ORS 163.205(1)(a) to criminalize nonfeasance rather than affirmative conduct. In response, the state reiterates its argument from below that "once defendant had her hand over the victim's mouth and was obstructing his breathing, she had a duty to remove her hand, and to provide physical care to restore his breathing."[1] We conclude that defendant's act of placing her hand over the victim's mouth does not constitute "withhold[ing] necessary and adequate * * * physical care" from the victim under ORS 163.205(1)(a).

As noted, ORS 163.205(1)(a) provides that a person commits first-degree criminal mistreatment if "[t]he person, in violation of a legal duty to provide care for another

---

[1] Additionally, the state argues for the first time on appeal that defendant withheld necessary and adequate physical care from the victim by failing to adhere to general protocols for treating residents with dementia and residents that resist care, and by failing to adhere to the victim's individual treatment plan. Had the state argued that theory below, defendant could have developed a different record in response. Accordingly, we will not consider that theory for the first time on appeal. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (setting out conditions in which a reviewing court may affirm the ruling of a lower court on an alternative basis and noting that, "even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance" (emphasis in original)).

person, * * * intentionally or knowingly withholds necessary and adequate * * * physical care" from the dependent person. In *State v. Baker-Krofft*, 348 Or 655, 658, 239 P3d 226 (2010), which decided two cases, the defendants were indicted for "withhold[ing] necessary and adequate * * * physical care" from their children based on the cluttered and hazardous condition of their homes. The trial courts denied their motions for judgment of acquittal, and the defendants were convicted of violating ORS 163.200[2] and ORS 163.205, respectively. *Id.* at 659. We affirmed the trial court's decision in each case. *Id.* On review, the state argued that "potential environmental dangers are covered by [ORS 163.205] because '[k]eeping a child safe necessarily includes protecting him from dangers in his environment.'" *Id.* at 661 (second brackets in *Baker-Krofft*).

The Supreme Court disagreed and, instead, construed ORS 163.205(1)(a) to "apply only if the person with the duty to provide care withholds or keeps back food, physical care, or medical attention 'from th[e dependent] person'; that is, the statutes rest on the premise that the actor keeps back something (food, physical care, or medical attention) from a person who would not otherwise be able to obtain it for him or herself." *Id.* at 662 (brackets in original). On that basis, the court concluded that "a defendant withholds physical care from a dependent person when the defendant keeps back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs." *Id.* In each case, there was no evidence that the defendants had "failed to provide for their children's bodily needs or protect them from an immediate harm." *Id.* at 667.

In doing so, the Supreme Court explained that the legislative history supported its interpretation of ORS 163.205(1)(a). The court described that history as follows:

"The bill, as drafted, raised vagueness concerns, and Senators Fadeley and Carson undertook to redraft the bill. Their work produced a bill that is substantially in the same form as the wording in the current statutes. As

---

[2] ORS 163.200, the second-degree criminal mistreatment statute, also criminalizes the "withhold[ing] [of] necessary and adequate * * * physical care" from a dependent person under certain circumstances.

redrafted, the bill applied to dependent persons generally while specifying more particularly the actions that the bill prohibited—withholding necessary and adequate food, physical care, and medical attention. The Senate committee considered the bill at its next two hearings. No tape recording of those hearings exists, and the minutes of those hearings do not provide any guidance on the meaning of the redrafted bill. The only explanation of the redrafted bill comes from Senator Carson's discussion of the bill before the full Senate.

"Before the full Senate, Senator Carson began by referring to the testimony presented before the committee about the abuse of the elderly that had taken place in assisted living facilities. Tape Recording, Senate Floor, SB 780, June 29, 1973, Tape 32, Side 1 (statement of Sen Wallace P. Carson, Jr.). He then stated:

"'[The bill is] a little different than the bill that was originally introduced, but I believe it goes to the same point. We [heard] considerable testimony in committee [about] some of the practices in some of the homes for the aged, or, in fact, where any citizen of Oregon may be housed. Sometimes people can hurt other people by intentionally or negligently withholding adequate food, physical care or medical attention from the people when they have an affirmative duty to provide that attention. *We felt that the criminal code, if it's a physical abuse thing where somebody actually hits someone, the criminal code takes care of that [already].*

"'*Where it's nonfeasance rather than malfeasance, in other words, where it's withholding of some food or some other thing, the criminal code perhaps did not speak directly to that.*'"

348 Or at 665-66 (brackets in original; emphasis added).

Here, defendant's conduct—placing her hand over the victim's mouth so that he had difficulty breathing—does not constitute "withhold[ing] necessary and adequate * * * physical care" from the victim under ORS 163.205(1)(a). The Supreme Court's decision in *Baker-Krofft* and the legislative history of ORS 163.205 illustrate that the legislature did not intend ORS 163.205(1)(a) to criminalize affirmative conduct against a dependent person. Rather, as the court held in *Baker-Krofft*, the legislature intended to prohibit "keep[ing]

back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs." 348 Or at 662.

The state asserts that, even if defendant's initial action of placing her hand over the victim's mouth is not within the purview of ORS 163.205(1)(a), her failure to remove her hand constitutes a "withhold[ing] [of] necessary and adequate * * * physical care" from the victim. In other words, the state argues that, in the seconds that defendant's hand was over the victim's mouth, defendant did not provide the physical services or attention (removing her hand) that was necessary to provide for the victim's bodily needs (breathing). We reject that argument. Just as ORS 163.205(1)(a) does not apply to affirmative conduct, it does not apply to a defendant's failure to stop engaging in that affirmative conduct. Concluding otherwise would have the effect of bringing within the purview of the statute those affirmative acts—such as physical abuse—that the legislature did not intend to include.

Finally, to the extent that the state asserts that defendant violated ORS 163.205(1)(a) by failing to "restore [the victim's] breathing" after she moved her hand away from his mouth, we also reject that assertion. The state presented no evidence that the victim had difficulty breathing after defendant removed her hand from his mouth. Accordingly, the trial court erred in denying defendant's motion for judgment of acquittal on the first-degree criminal mistreatment charge.

Second, defendant contends that the trial court erred in denying her motion for judgment of acquittal on the witness tampering charge, arguing, as she did before the trial court, that there was insufficient evidence to show that she intended to induce Rivera not to testify in an official proceeding. The state responds that the jury was "entitled to infer that, because of the severity of the conduct, and because defendant knew Rivera had witnessed her strangling the victim, she would have expected that either nursing board proceedings or a criminal investigation, or both, would be forthcoming." We conclude that the state presented

insufficient evidence to show that defendant intended to induce Rivera not to testify in an official proceeding.

ORS 162.285(1)(a) provides that a person commits the crime of tampering with a witness if

"[t]he person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony[.]"

An "official proceeding" is "a proceeding before any judicial, legislative or administrative body or officer, wherein sworn statements are received, and includes any referee, hearing examiner, commissioner, notary or other person taking sworn statements in connection with such proceedings." ORS 162.225(2).

The Supreme Court construed ORS 162.285(1)(a) in *State v. Bailey*, 346 Or 551, 213 P3d 1240 (2009). In that case, the defendant was charged with witness tampering after he threatened to kill his daughter if she called police to report his possession of stolen all-terrain vehicles (ATVs). *Id.* at 553. Specifically, the defendant warned her that, "if you make fucking phone calls [to the police] starting the bullshit, it'll be the last phone call you fucking make." *Id.* (internal quotation marks omitted). This court affirmed the trial court's denial of the defendant's motion for judgment of acquittal on the witness tampering charge. *Id.* at 555. On review, the Supreme Court held that, although ORS 162.285(1)(a) applies to official proceedings that "may be (but have not yet been) commenced," *id.* at 559, "to constitute a violation of the statute, the offender's knowing inducement or intended inducement must reflect, either directly or by fair inference, that the offender at that time specifically and reasonably believes that the victim will be called to testify at an official proceeding." *Id.* at 565. Further, the court noted that, to convict the defendant of witness tampering in that case, the jury had to make a series of inferences, the last of which was impermissible:

"*The jury would have to infer that the threats of retribution that defendant made were intended to induce defendant's daughter not to testify in that hypothetical future criminal prosecution. Given the focus of defendant's statement, we*

think that that inference simply is speculation. The most that can be said is that defendant threatened immediate consequences if his daughter made a report about the stolen ATVs to the police. Those threats were not about an official proceeding, either explicitly or by permissible inference."

*Id.* at 567 (emphasis added).

Here, defendant made two statements threatening Rivera. First, she left a voicemail message on Mayes's cell phone: "If you happen to see [Rivera], tell her she may not want to fucking cross my path because I will kill her fucking ass." Minutes later, she sent a text message to Mayes: "So when you see her tell that bitch that I will kill her if I get fired[]." Neither statement is direct evidence of defendant's intent to induce Rivera not to testify in an official proceeding. At most, the second statement supports an inference that she intended to induce Rivera not to report her conduct to her employer.

Nevertheless, the state asserts that the jury was entitled to infer that defendant knew that, if Rivera reported her conduct, she could be subject to nursing board proceedings that could cause her to lose her license and be fired. In doing so, the state notes that "Mayes—who, like defendant, was also a CNA—testified that 'with a report of this sort of thing' she would expect, among other things, a nursing board hearing about 'whether you could keep your employment or your license.'" We reject the state's argument for the reasons set out in *Bailey*. Even if the jury could permissibly infer that, if Rivera made a report, a nursing board action (or a criminal prosecution) would follow, the jury would still have to infer that defendant's threats (to kill Rivera if she was *fired*) were intended to induce Rivera not to testify in that hypothetical future nursing board action or criminal prosecution. That inference amounts to impermissible speculation. The state presented insufficient evidence that defendant intended to induce Rivera not to testify in an official proceeding. Accordingly, the trial court erred in denying defendant's motion for judgment of acquittal on the witness tampering charge.

Finally, we consider defendant's contention that the court erred in admitting evidence of her prior bad acts, including evidence that she had previously threatened

the victim and a female resident with physical harm. As noted, before trial, the state moved *in limine* for a ruling on the collective admissibility of "evidence of defendant's prior verbal and physical abuse of residents in her care," arguing that defendant's prior acts were relevant under OEC 404(3)[3] to show her "scheme, plan, her way of dealing with people in her care that presented problems to her." The state elaborated, relying upon *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), that the evidence was also probative of defendant's intent, that she "knowingly" committed the charged crimes of first-degree criminal mistreatment and strangulation.

At the hearing on that motion, the prosecutor described some of defendant's prior statements and referred the court to a document, "Exhibit 8," that contained a complete list of defendant's prior statements that the state sought to introduce. "Exhibit 8" was not offered or received into evidence, and it is not in the trial court record. For her part, defendant generally opposed the state's motion, arguing that evidence of her prior bad acts was inadmissible under *Johns* because "the verbal statements are in no way similar to the strangulation and criminal mistreatment charged in this case."

Neither party made separate arguments regarding the specific statements that the state sought to introduce, arguing instead that the evidence as a whole was relevant or not to defendant's intent or plan under OEC 404(3). The court ruled, without explanation, that defendant's acts in the six months prior to the alleged crimes were admissible, and, as described below, the state introduced testimony from Rivera and Mayes that defendant had previously verbally and physically abused residents in her care.

On appeal, defendant raises nine assignments of error related to that testimony, contending in each that

---

[3] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

the court erred in admitting specific evidence at trial that is inadmissible under OEC 404(3). The state responds that defendant failed to preserve those assignments of error. However, as explained below, we conclude that defendant preserved two assignments of error related to the specific evidence admitted at trial, that the court erred in admitting that evidence, and that the errors were not harmless.[4]

At trial, the state called Rivera to testify regarding defendant's prior statements to the victim and other residents. During Rivera's testimony, the following exchange took place:

"[PROSECUTOR]: Well, do you recall things that [defendant] would do or say in dealing with [the victim]?

"[RIVERA]: Yeah. I recall a lot of things that were said or * * * did to him.

"[PROSECUTOR]: Could you give us an example?

"[DEFENSE COUNSEL]: Objection.

"[PROSECUTOR]: Your Honor, I'm asking her about a statement of the Defendant in dealing with [the victim] prior to this incident, but within a six-month period. Is that allowed?

"[DEFENSE COUNSEL]: I objected, Your Honor.

"THE COURT: I'll allow it."

---

[4] Defendant also assigns error to the court's grant of the state's motion *in limine*, reiterating her argument from below that evidence of her prior bad acts is inadmissible under OEC 404(3). The state responds that, under *State v. Garcia*, 206 Or App 745, 138 P3d 927 (2006), "because [defendant] did not make separate arguments regarding specific items of evidence [below], if any part of the evidence the state offered was admissible, then the court did not err by admitting the category of evidence." The state reasons that, because "Exhibit 8" is not in the record, defendant cannot show that all of the evidence that the state sought to introduce was inadmissible and, thus, we must reject defendant's assignment of error challenging the court's ruling on the motion *in limine*. *See York v. Bailey*, 159 Or App 341, 348, 976 P2d 1181, *rev den*, 329 Or 287 (1999) ("[I]f the record is not adequate to permit us to determine that an error, if any, is reversible, that deficiency accrues to the detriment of the party seeking a modification of the judgment because the appellate court must in that circumstance affirm the judgment."). Our conclusions that defendant preserved two assignments of error related to the specific evidence admitted at trial, that the court erred in admitting that evidence, and that the errors were not harmless obviates the need to consider defendant's remaining assignments of error, including the assignment that relates to the motion *in limine*.

Rivera then testified that, in the past, when the victim had resisted care, defendant "would get upset with him, and say—you know—'Old man, you need to turn over. We got to get you changed.' Or she would say—you know—'Don't pinch me. I'll pinch you back.'" Rivera described "incidents where she would say—you know—'You better knock it off, old man, or I'm going to rip your nut sack off.'" The prosecutor also asked Rivera about statements that defendant had made to a female resident. At that point, defense counsel noted that he was "continuing [his] objection." The trial court did not orally respond to counsel's objection, and Rivera explained as follows: "And [defendant] did tell her * * * 'Don't pinch me, or I'll pinch you back. See how you like it. You pinch me again, I'll just break your fingers off, and see how you like it.'"

As noted, the state contends that defendant's objections at trial failed to preserve her argument on appeal that the court erred in admitting evidence of her past statements to the victim and the female resident. We disagree. Given the hearing on the state's motion *in limine*, the basis for defendant's objections was apparent to the state and the trial court. The prosecutor made that clear when, in response to defendant's objection, he referenced the court's earlier ruling on that motion. Accordingly, defendant preserved her contentions on appeal that the court erred in admitting that evidence.

We now turn to the merits. Defendant contends that the court erred in admitting her past statements to the victim and the female resident, arguing that those statements are inadmissible prior bad acts evidence under OEC 404(3) because the evidence is not relevant to a noncharacter purpose. The state responds generally that the evidence is relevant to demonstrate defendant's intent or plan to treat the victim abusively. In particular, the state claims that defendant's past statements to the victim are "relevant to the question whether defendant reacted to the victim's resistance to treatment with physical abuse, or whether the victim bit her as she was rendering care, as she claimed." Similarly, the state argues that defendant's statements to the female resident are relevant regarding "whether defendant was likely to have physically abused [the victim] in front of a witness." We conclude that defendant's

past statements to the victim and the female resident are inadmissible under OEC 404(3).

As noted, OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Under OEC 404(3), evidence of a defendant's prior bad acts is inadmissible if it is "offered solely to prove (1) the character of a person, and (2) that the person acted in conformity therewith." *Johns*, 301 Or at 548. In that context, "character" means "disposition or propensity to commit certain crimes, wrongs or acts." *Id.* However, OEC 404(3) does not prohibit the admission of prior bad acts evidence if it is "relevant for some other legitimate purpose." *State v. Leistiko*, 352 Or 172, 180, 282 P3d 857 (2012); *see also State v. Cox*, 337 Or 477, 484-85, 98 P3d 1103 (2004) (prior bad acts evidence admissible to show that the defendant feared the victim); *Johns*, 301 Or 535 (under certain circumstances, prior bad acts evidence admissible to show intent or absence of mistake). As explained by the court in *State v. Johnson*, 340 Or 319, 338, 131 P3d 173, *cert den*, 549 US 1079 (2006), "the essential inquiry under OEC 404(3) is not whether the testimony can be made to fit into one of the listed categories, but whether and how it is logically relevant to a noncharacter issue in the case."

The state's stated rationale for the admission of the prior acts evidence is essentially that defendant's commission of abusive acts toward patients in the past made it more likely that defendant "reacted to the victim's resistance to treatment with physical abuse" or "physically abused [the victim] in front of a witness," *i.e.*, committed the crimes in question. That is nothing more than propensity evidence of what defendant did, evidence that is proscribed by OEC 404(3).

Some degree of similarity or connection between the prior acts and the charged conduct is necessary to establish

the logical relevance of the evidence, no matter the rationale for its admission. As explained in *Johnson*,

> "any similarity in the circumstances increases the probative value of the prior crime evidence and enhances the argument for admissibility under OEC 404(3). Likewise, the timing of uncharged crimes *vis-à-vis* the charged crime and the number of instances that are shown may affect the question of admissibility. No categorical rule exists, but timing, repetition, and similarity of both the act and the surrounding circumstances all are important considerations."

*Id.* at 340.

Thus, the connection between the prior acts and the charged crime may be "to show the factual background of closely connected crimes or the time sequence leading up to the commission of the crime charged." Laird C. Kirkpatrick, *Oregon Evidence* § 404.06[12][c] (4th ed 2002). Here, however, defendant's statements to the victim and the female resident were not closely connected in time or operation to the charged crime. Moreover, the state did not contend before the trial court, and does not contend on appeal, that defendant's alleged statements to the victim were admissible under the rationale expressed in *State v. Moen*, 309 Or 45, 69, 786 P2d 111 (1990) (evidence of recent threat to kill the victim admissible to show that the defendant later acted consistently with that expressed intent).

For evidence that is more attenuated from the crime—here, evidence of previous and unrelated threats to the victim and the female resident—the prior acts and charged conduct must be similar enough to allow an inference of a logical relationship between the events. Thus, under *Johns*, to prove intent from prior bad acts, the evidence is assessed under a multipart test that includes whether "the victim in the prior act [is] the same victim or in the same class as the victim in the present case," whether "the type of prior act [is] the same or similar to the acts involved in the charged crime," and whether "the physical elements of the prior act and the present act [are] similar." 301 Or at 56.

Factual similarity is even more necessary to prove a common plan or scheme under OEC 404(3). The *Leistiko*

court contrasted, by reference to John Henry Wigmore, 2 *Evidence* § 304 (Chadbourne rev 1979), between the use of prior bad acts evidence for proving intent as opposed to plan:

"Wigmore distinguished the use of other crimes evidence to prove intent, as opposed to plan, as follows:

"'In the former case (of intent) the attempt is merely to negative the innocent state of mind at the time of the act charged; in the present case the effort is to establish a definite prior design or system which included the doing of the act charged as part of its consummation. In the former case, the result is to give a complexion to a conceded act, and ends with that; in the present case, the result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed.'

"*Id.* § 304 at 249. Wigmore reasons explicitly, as *Johnson* did implicitly, that a pattern of prior similar acts may be admissible to prove a plan or design. Wigmore, 2 *Evidence* § 304 at 249; *Johnson*, 340 Or at 340-41. However, as both Wigmore and *Johnson* recognized, the level of similarity required to prove a plan or design is greater than the level of similarity required to prove intent. *See* Wigmore, 2 *Evidence* § 304 at 249, *Johnson*, 340 Or at 340-41. As Wigmore explained, in order to infer a plan or design from prior similar acts, the proponent of the evidence must show 'not merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations*.' Wigmore, 2 *Evidence* § 304 at 249 (emphasis in original) * * *."

352 Or at 187-88.

Under either rationale, a common intent or plan, the prior acts in this case were insufficiently similar to the charged conduct to be relevant evidence. The charged conduct was the crime of strangulation. ORS 163.187(1) defines that crime as follows:

"A person commits the crime of strangulation if the person knowingly impedes the normal breathing or circulation of the blood of another person by:

"(a) Applying pressure on the throat or neck of the other person; or

"(b) Blocking the nose or mouth of the other person."

The prior acts were not related to the crime of strangulation. Those acts did not threaten that crime or foreshadow its commission. Defendant's prior statements to the victim and another patient threatened retaliation for potential conduct ("Don't pinch me. I'll pinch you back.") or bad consequences for continued behavior ("You better knock it off, old man, or I'm going to rip your nut sack off."). The charged conduct did not threaten harm; it was physically harmful. The effect of the charged conduct was to physically change the victim's condition, rather than cause the victim to take action to change his behavior. There is little "concurrence of common features" between the prior acts and the charged conduct, in such a way that the prior acts are sufficient to show a plan or scheme or a common intent. Proof that defendant intentionally made past unrelated oral threats to the victim and the female resident does not make it more likely that defendant knew that she was impeding the normal breathing of the victim by blocking his mouth or that defendant committed the charged crime by design.

Moreover, the prior act evidence was relevant to show intent only if intent was disputed. As noted in *State v. Phillips*, 217 Or App 93, 99, 174 P3d 1032 (2007), "uncharged misconduct evidence is admissible only if it is relevant to some *contested* issue beyond propensity or bad character." (Emphasis in original.) Defendant claimed that she did not place her hand over the victim's mouth; she did not contest whether, had she done that act, she would have known that it would impede the victim's breathing. In many instances, "where the occurrence of the act remain[s] at issue," evidence of prior bad acts is not admissible to prove a defendant's intent. *Leistiko*, 352 Or at 184. We recently recognized that this rule is not without exception:

"Indeed, the facts or nature of the charges may be such that, even if a defendant denies committing the charged acts, the defendant's previous conduct will shed light on a contested issue of *mens rea*—for example, who, between the defendant and the victim, was the aggressor during a fight,

[*State v.*] *Yong*, 206 Or App [522, 542-43, 138 P3d 37, *rev den*, 342 Or 117 (2006)]; whether the defendant had homicidal intent when killing the victim, [*State v.*] *Moen*, 309 Or [45, 68-69, 786 P2d 111 (1990)]; or whether the acts, even if committed, lend themselves to some other explanation of the defendant's intent, *cf.* [*State v.*] *Sicks*, 33 Or App [435, 438, 576 P2d 834 (1978)] (where the charged acts 'would by themselves strongly indicate the required state of mind,' evidence of prior bad acts 'should generally be admitted only if defendant concedes the alleged act but claims that it was inadvertent or innocent')."

*State v. Hutton*, 250 Or App 105, 119, 279 P3d 240 (2012). Here, there is no particular issue of *mens rea*, such as inadvertence, malice, deliberation, or a specific intent, that is in question. The trial court erred in admitting evidence of defendant's past statements to the victim and the female resident.

However, we must still consider whether those errors were harmless as they relate to defendant's remaining conviction for strangulation. An evidentiary error is harmless if there is little likelihood that the error affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, the central issue in the case—whether defendant strangled the victim by placing her hand over his mouth—came down to a credibility contest between Rivera and defendant, who also testified. Defendant testified that she did not place her hand over the victim's mouth but, rather, that he came up and bit her hand as she cared for him. Under those circumstances, evidence showing that defendant had previously threatened the victim and another resident with physical harm was prejudicial. Although, as noted, the state presented other evidence (the objection to which may not have been preserved) regarding defendant's previous verbal and physical abuse of residents, we cannot say that that evidence renders the erroneously admitted statements duplicative. The state presented no other evidence that defendant had threatened or verbally abused the *victim*. Moreover, the evidence of past physical abuse—Mayes's testimony that she observed defendant forcefully holding the hand of a resident who is "known to slap and pinch and bite"—is not so egregious that it renders

the errors harmless. Defendant's statements threatening to castrate the victim and to "break [the] fingers off" of the female resident were especially severe, even in comparison to the alleged physical abuse. Accordingly, the errors were not harmless.

Convictions for first-degree criminal mistreatment and tampering with a witness reversed; conviction for strangulation reversed and remanded.