**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID FLORES-VEGA,<br>*Petitioner*,<br><br>v.<br><br>WILLIAM P. BARR, Attorney General,<br>*Respondent*. | No. 14-70690<br><br>Agency No.<br>A096-106-096<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 16, 2019
Seattle, Washington

Filed August 2, 2019

Before: Michael Daly Hawkins and William A. Fletcher,
Circuit Judges, and Richard Seeborg,* District Judge.

Opinion by Judge W. Fletcher

---

*The Honorable Richard Seeborg, United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY**

### Immigration

Denying David Flores-Vega's petition for review of a decision of the Board of Immigration Appeals, the panel held that: 1) Flores-Vega's conviction under Oregon Revised Statute § 163.187(1) for "strangulation" was categorically a crime of violence aggravated felony that made him removable and ineligible for asylum; 2) the BIA abused its discretion in concluding that the conviction was a particularly serious crime that made Flores-Vega ineligible for withholding of removal; and 3) the BIA's denial of withholding of removal and relief under the Convention Against Torture ("CAT") was supported by substantial evidence.

Under 8 U.S.C. § 1101(a)(43)(F), "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment is at least one year," constitutes an aggravated felony. Applying the categorical approach, the panel concluded that strangulation, as defined at O.R.S. § 163.187(1), is a crime of violence within the meaning of 18 U.S.C. § 16(a), which covers "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." In so concluding, the panel explained that Flores-Vega had not established a realistic probability that Oregon would apply its statute to conduct falling outside the scope of § 16(a). Accordingly, the panel concluded that

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Flores-Vega's conviction was an aggravated felony that made him removable and ineligible for asylum.

The panel concluded that the BIA abused its discretion in concluding that Flores-Vega's conviction was also a particularly serious crime that made him ineligible for withholding of removal. The panel explained that where, as here, a withholding applicant was sentenced to fewer than five years imprisonment for an aggravated felony conviction, the BIA *may* determine that the conviction qualifies as a particularly serious crime. The applicable legal standard is based on a list of factors the BIA set forth in *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982). The panel concluded that the BIA misapplied the *Frentescu* factors in two key respects: 1) it failed to engage in a case-specific factual analysis of the circumstances and underlying facts of the conviction; and 2) it erroneously looked at the *potential* penalty for a violation, but the relevant factor instructs the agency to examine the type of sentence *imposed*.

Nonetheless, the panel found no error in the BIA's alternate ground that Flores-Vega failed to carry his burden of showing eligibility for withholding of removal. First, the panel rejected the government's contention that the court lacked jurisdiction to review the merits of Flores-Vega's withholding claim. Under 8 U.S.C. § 1252(a)(2)(C), the court lacks jurisdiction to review any final order against an alien who is removable for having committed an aggravated felony. However, the panel explained that, under this court's precedent, that provision applies only to removal orders, and not to applications for asylum and related relief. Where, as here, the BIA denies relief on the merits, rather than based on a conviction, the court retains jurisdiction to review the merits.

Next, the panel concluded that substantial evidence supported the denial of withholding, concluding that Flores-Vega failed to establish a clear probability of future persecution based on a protected ground. The panel acknowledged testimony from Flores-Vega and witnesses on his behalf that he would be targeted because people in Mexico would know he came from the United States and would assume his family had money for a ransom, as well as testimony about general conditions of violence related to gangs and an ongoing land dispute in his hometown. However, the panel concluded that there was no evidence in the record that the danger he may face had the required nexus to a protected ground.

Finally, the panel concluded that the BIA's denial of Flores-Vega's application for protection under CAT is also supported by substantial evidence, concluding that he had not shown that he is more likely than not to be tortured in Mexico with the consent or acquiescence of a public official.

---

**COUNSEL**

Randy J. Tanner (argued) and Matthew B. Hayhurst, Boone Karlberg PC, Missoula, Montana, for Petitioner.

Matthew J. Glover (argued) and David H. Wetmore, Trial Attorneys; John S. Hogan, Assistant Director. Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

We are asked to decide whether a conviction under Oregon Revised Statute § 163.187(1) for "strangulation" is categorically a crime of violence for purposes of removability under the Immigration and Nationality Act ("INA"). We have jurisdiction pursuant to 8 U.S.C. § 1252 and conclude that it is. Because the petitioner is removable and is unable to show he is otherwise entitled to immigration relief, we deny his petition for review of the decision of the Board of Immigration Appeals ("BIA").

## I. Background

David Flores-Vega is a native and citizen of Mexico. He entered the United States in June 2002 when he was sixteen years old and adjusted his status to lawful permanent resident on November 26, 2003.

In September 2009, Flores-Vega pleaded guilty to violating O.R.S. § 163.187(1), which reads:

> (1) A person commits the crime of strangulation if the person knowingly impedes the normal breathing or circulation of the blood of another person by:
>
> > (a) Applying pressure on the throat, neck or chest of the other person; or
> >
> > (b) Blocking the nose or mouth of the other person.

The information in Flores-Vega's case reads: "The defendant, on or about September 12, 2009, in Marion County, Oregon, did unlawfully and knowingly impede the normal breathing of [the victim] by applying pressure on the throat and neck of [the victim]." On September 21, 2009, Flores-Vega signed a "Petition to Enter Plea." On the form, in the blank following the printed words "The factual basis for my guilt and my plea:," the words "as alleged" are written by hand. The court accepted the plea on September 25, 2009. Flores-Vega was given a suspended sentence of 365 days of imprisonment and 36 months of probation.

The Department of Homeland Security ("DHS") issued a Notice to Appear and initiated removal proceedings on November 18, 2009. DHS charged Flores-Vega as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, specifically, a crime of violence.

Flores-Vega contested his removability, arguing that his conviction under O.R.S. § 163.187(1) did not qualify as a "crime of violence." On June 20, 2011, an Immigration Judge ("IJ") issued an oral decision holding that a violation of O.R.S. § 163.187(1) categorically constitutes a crime of violence. The IJ wrote that O.R.S. § 163.187(1) "necessarily contemplates the volitional application of active physical force that is capable of causing, and in fact does cause, physical injury to another[.]"

Flores-Vega applied for defensive immigration relief in the form of asylum; withholding of removal under the INA; and protection under the Convention Against Torture ("CAT"), which includes withholding and deferral of removal. After two venue transfers, Flores-Vega appeared for a merits hearing before a new IJ. Flores-Vega testified

through an interpreter, as did his mother, his uncle, and the pastor of his church. Regarding his criminal conviction, Flores-Vega testified that he was falsely accused and had never committed the crime of strangulation, but that his attorney had advised him to plead guilty to "get out faster" and had not told him the "consequences" of a guilty plea. Regarding his fear of returning to Mexico, Flores-Vega testified that residents of his hometown were involved in a violent land dispute with a neighboring town. He further testified that all of Mexico was unsafe due to crime and that he was afraid he would be kidnapped because people in Mexico would assume his family in the United States had money for a ransom. The other three witnesses testified to similar fears.

On September 23, 2013, the IJ denied relief and ordered Flores-Vega removed to Mexico. The IJ found Flores-Vega credible, with the exception of his denial that he had committed the crime of strangulation, and found the other witnesses credible. The IJ did not independently evaluate whether Flores-Vega had committed a crime of violence, but cited the decision of the first IJ so holding. The IJ found Flores-Vega removable and held that he was ineligible for asylum, withholding of removal, and CAT relief because he had committed a "particularly serious crime." In the alternative, if Flores-Vega's Oregon conviction did not qualify as a particularly serious crime, the IJ found he had not carried his burden to show eligibility for withholding or CAT relief.

Flores-Vega appealed to the BIA. The BIA adopted and affirmed the IJ's decision. First, the BIA upheld the determination that strangulation under O.R.S. § 163.187(1) is categorically a crime of violence and therefore an aggravated

felony, which made Flores-Vega removable and ineligible for asylum.  The BIA also agreed that Flores-Vega's conviction was for a "particularly serious crime," which made him ineligible for withholding of removal and CAT relief. Finally, the BIA upheld the IJ's "alternative finding" that Flores-Vega had not demonstrated on the merits that he qualified for withholding of removal or CAT relief.

This petition for review followed.

## II.  Crime of Violence

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "Any alien who is convicted of an aggravated felony at any time after admission is deportable."  Although we lack jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed" an aggravated felony, 8 U.S.C. § 1252(a)(2)(C), we have jurisdiction to review as a question of law whether a petitioner's prior offense qualifies as an aggravated felony.  *Id.* § 1252(a)(2)(D); *Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1053 (9th Cir. 2006).

An "aggravated felony" for purposes of the INA includes "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment is at least one year."  8 U.S.C. § 1101(a)(43)(F).  A "crime of violence" is defined at 18 U.S.C. § 16 as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212–16 (2018), the Supreme Court held that § 16(b) was unconstitutionally vague. Therefore, Flores-Vega's conviction qualifies as a crime of violence only if it meets the definition contained in § 16(a). We conclude that it does.

We review de novo whether a conviction qualifies as a crime of violence. *See Flores-Lopez v. Holder*, 685 F.3d 857, 861–62 (9th Cir. 2012). To determine whether a conviction under O.R.S. § 163.187(1) is for a crime of violence, without regard to the facts underlying the particular conviction, we apply the categorical approach from *Taylor v. United States*, 495 U.S. 575 (1990). *Id.* at 862. Under this approach, we look "only to the fact of conviction and the statutory definition of the prior offense." *Id.* (quoting *Taylor*, 495 U.S. at 602).

We consider whether the state statute describes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(b); *Flores-Lopez*, 685 F.3d at 862. The physical force "must actually be violent in nature," meaning it is "capable of hurting or causing injury[.]" *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006) (citation omitted). By contrast, "conduct involving mere offensive touching does not rise to the level of a 'crime of violence' within the meaning of 18 U.S.C. § 16(a)." *Id.* at 1017. A statute is a categorical match for

§ 16(a) only if "*every* violation of the statute *necessarily* involves violent force.*"  Solorio-Ruiz v. Sessions*, 881 F.3d 733, 737 (9th Cir. 2018) (citing *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)).

To show that a conviction does not qualify as a conviction for a crime of violence, a petitioner must demonstrate "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the scope of § 16(a).  *See United States v. Ruiz-Apolonio*, 657 F.3d 907, 914 (9th Cir. 2011) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).  A petitioner can demonstrate a realistic probability either if "[t]he state statute's greater breadth is evident from its text," *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007), abrogated on other grounds by *United States v. Stitt*, 139 S. Ct. 399 (2018), or if the petitioner can "point to at least one case in which the state courts applied the statute in the manner that he posits," *Ruiz-Apolonio*, 657 F.3d at 914.

Flores-Vega argues that *Oregon v. Kaylor*, 289 P.3d 290 (Or. Ct. App. 2012), demonstrates Oregon state courts apply the strangulation statute to non-violent conduct.  In *Kaylor*, the defendant was a certified nursing assistant in a nursing home.  *Id.* at 292.  Kaylor began washing a resident, who suffered from dementia, and the resident resisted.  *Id.*  A second nurse offered to help.  *Id.*  The resident was "yelling" as the two nurses rolled him onto his side to clean him.  *Id.*  When the second nurse noticed that the resident had gone quiet, she looked up to see Kaylor covering his mouth.  *Id.*  The second nurse later testified that Kaylor's hand remained in place for ten seconds, during which time the resident "was bright red in the face" and "looked terrified," as if he could not breathe.  *Id.*  The court noted that "[t]he state presented no

evidence that the victim had difficulty breathing after defendant removed her hand from his mouth." *Id.* at 295. Kaylor was convicted by a jury of violating O.R.S. § 163.187(1). *Id.* at 292.

Kaylor's conduct, as described by the state court, was plainly "*capable* of hurting or causing injury." *See Ortega-Mendez*, 450 F.3d at 1016 (emphasis added). Though the resident may not have suffered lasting physical harm, he turned "bright red" and "looked terrified" during the encounter. *See Kaylor*, 289 P.3d at 292. The force used in *Kaylor* goes beyond "mere offensive touching." *See Ortega-Mendez*, 450 F.3d at 1017. Flores-Vega points to no other case demonstrating that O.R.S. § 163.187(1) has been applied to conduct other than violent, physical force.

The application of the statute to non-violent conduct is not "evident from its text." *See Grisel*, 488 F.3d at 850. To be convicted under the statute, a person must "knowingly impede[] the normal breathing or circulation of the blood of another person." O.R.S. § 163.187(1). It is difficult to imagine how a defendant could apply enough force to impede normal functions without exerting physical force that is "capable of hurting or causing injury." If such a case exists, there is no evidence that Oregon intended for the statute to encompass it or would prosecute it.

Strangulation, as defined at O.R.S. § 163.187(1), is "an offense that has as an element the use . . . of physical force." 18 U.S.C. § 16(a). Flores-Vega has been convicted of a crime of violence within the meaning of § 16(a). He is accordingly removable under 8 U.S.C. § 1227(a)(2)(A)(iii) as a noncitizen "who [was] convicted of an aggravated felony."

### III.  Particularly Serious Crime

Flores-Vega applied for defensive relief in the form of asylum, withholding of removal, and protection under CAT in the event he was found removable.  A noncitizen convicted of a "particularly serious crime" is barred from a grant of asylum and from withholding of removal under the INA or CAT.  8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2).  The only immigration relief available to a noncitizen convicted of a "particularly serious crime" is deferral of removal under CAT, which provides fewer protections than withholding.  *See Eneh v. Holder*, 601 F.3d 943, 946 (9th Cir. 2010).

For purposes of asylum, an aggravated felony is *per se* a particularly serious crime.  8 U.S.C. § 1158(b)(2)(B)(i).  We determined above that strangulation, as defined at O.R.S. § 163.187(1), is a crime of violence and an aggravated felony under the INA.  Flores-Vega is therefore categorically ineligible for asylum relief.

The analysis is different for withholding of removal.  An aggravated felony is *per se* a particularly serious crime if the withholding applicant was sentenced to a term of imprisonment of at least five years.  8 U.S.C. § 1231(b)(3)(B).  Where, as here, the applicant was sentenced to fewer than five years, the BIA *may* determine that an applicant's aggravated felony conviction qualifies as a particularly serious crime.  8 U.S.C. § 1231(b)(3)(B).

Pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), we "lack jurisdiction over the BIA's ultimate determination that [Flores-Vega] committed a particularly serious crime." *Anaya-Ortiz v. Holder*, 594 F.3d 673, 676 (9th Cir. 2010)

(internal quotations and citation omitted). But we retain jurisdiction to "determine whether the BIA applied the correct legal standard." *Id*. (citation omitted). We review the BIA's decision for abuse of discretion. *Arbid v. Holder*, 700 F.3d 379, 383 (9th Cir. 2012). In particular, we review whether "the agency relied on the appropriate factors and proper evidence to reach [its] conclusion." *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1077 (9th Cir. 2015) (internal quotations and citation omitted). We conclude the BIA abused its discretion in this case.

The applicable legal standard is based on the BIA's decision in *Matter of Frentescu*, 18 I. & N. Dec. 244 (BIA 1982), as subsequently modified by the BIA. *Anaya-Ortiz*, 594 F.3d at 679. *Frentescu* lists the factors to consider as: "[the] nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Frentescu*, 18 I. & N. Dec. at 247. Under a BIA regulation promulgated after *Frentescu*, the final factor does not trigger an independent inquiry. Instead, "an alien who has been convicted of a particularly serious crime shall be considered to constitute a danger to the community." 8 C.F.R. § 1208.16(d)(2); *see also Gomez-Sanchez v. Sessions*, 892 F.3d 985, 991 (9th Cir. 2018) ("[T]here is no statutory requirement for a separate determination of dangerousness focusing on the likelihood of future serious misconduct on the part of the alien.").

The BIA misapplied the *Frentescu* factors in two key respects. First, in examining "the circumstances and underlying facts of the conviction," the BIA failed to engage in a case-specific factual analysis. We have previously held

that the BIA's particularly serious crime determination cannot rest solely on the elements of conviction. In *Afridi v. Gonzales*, 442 F.3d 1212, 1220 (9th Cir. 2006), *overruled on other grounds by Estrada-Espinoza v. Mukasey*, 546 F.3d 1147 (9th Cir. 2008), we held that the BIA committed reversible error where it "failed to engage in a case-specific analysis" and instead "generalized to conclude that the type of crime committed by [the petitioner] was particularly serious," in that case, "unlawful sexual intercourse with a minor." Similarly, in *Blandino-Medina v. Holder*, 712 F.3d 1338, 1346 (9th Cir. 2013), we held that the BIA may not designate certain crimes as "particularly serious crimes *per se*" by relying solely on the elements of the offense. We held that the BIA must instead engage in *Frentescu*'s "case-by-case analysis." *Id.* at 1347.

The BIA failed to do so here. The BIA explicitly adopted the IJ's analysis, which relied on the BIA's earlier decision in *Matter of N–A–M–*, 24 I. & N. Dec. 336 (BIA 2007), to hold that "the elements of the offense alone can establish that the offense, by its nature, qualifies as particularly serious." But our decision in *Blandino-Medina* rejected *Matter of N–A–M–* to the extent it so held. *See Blandino-Medina*, 712 F.3d at 1347–48.

The BIA's analysis did nothing to correct the IJ's error. The BIA wrote that the crime "likely induced great fear in his victim" and that it was concerned by "the bodily harm that the victim suffered." These statements are based on pure conjecture. The BIA had no evidence of the victim's subjective fear or bodily harm. Because Flores-Vega's own account of the crime was found not credible, the BIA had only the information filed in the criminal case, which simply restated the statutory definition of the crime with the victim's

name inserted.  As in *Afridi*, "there is nothing in the BIA's analysis regarding [Flores-Vega's] conviction for [strangulation] that would separate it from an analysis regarding any other person's conviction for the same offense." *See Afridi*, 442 F.3d at 1219.  The BIA relied on the elements of the crime and then imagined facts that might have existed to support the conviction.  Neither constitutes "proper evidence" in this context. *See Avendano-Hernandez*, 800 F.3d at 1077.

Second, the BIA erroneously looked at the potential penalty for a violation of O.R.S. § 163.187(1), noting that the crime "carries a substantial penalty."  But the third *Frentescu* factor instructs the agency to examine "the type of sentence *imposed*," not the maximum possible sentence for an offense. *Frentescu*, 18 I. & N. Dec. at 247 (emphasis added).  In *Frentescu*, the BIA held that "a suspended sentence after spending a relatively short period of time in prison (3 months)" weighed against finding the offense to be a particularly serious crime. *Id.* at 247.  Here, neither the IJ nor the BIA even mentioned, in analyzing the *Frentescu* factors, that Flores-Vega received an entirely suspended one-year sentence.

It is not our role to "reweigh the evidence and reach our own determination about the crime's seriousness." *Avendano-Hernandez*, 800 F.3d at 1077 (citation omitted).  But it is our role to ensure that the BIA "relie[s] on the appropriate factors and proper evidence" in determining whether a conviction constitutes a particularly serious crime. *See id.*  Because the BIA did not do so here, it abused its discretion.

## IV.  Withholding of Removal and CAT Relief

We nonetheless deny Flores-Vega's petition for review because we find no error in the BIA's alternate ground that Flores-Vega failed to carry his burden of showing eligibility for withholding of removal or for protection under CAT.

## A.  Jurisdiction

To start, we reject the government's contention that we lack jurisdiction to review the merits of Flores-Vega's claim for withholding of removal.  We have no jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed" an aggravated felony.  8 U.S.C. § 1252(a)(2)(C).  But this provision applies only "to removal orders, and not to applications for asylum, withholding of removal, or CAT relief."  *Arteaga v. Mukasey*, 511 F.3d 940, 942 n.1 (9th Cir. 2007) (citing *Morales v. Gonzales*, 478 F.3d 972, 980 (9th Cir. 2007)).  Where the BIA denies withholding on the merits, rather than based on an aggravated felony conviction, we retain jurisdiction to review the merits determination.  *See Morales*, 478 F.3d at 980; *Bromfield v. Mukasey*, 543 F.3d 1071, 1075–76 (9th Cir. 2008).  The government disagrees with our decision in *Morales*, but concedes that under that decision and its progeny we have jurisdiction in this case.

## B.  Discussion

We review for substantial evidence factual findings underlying the denial of a withholding or CAT claim. *Unuakhaulu v. Gonzales*, 416 F.3d 931, 937 (9th Cir. 2005) (citation omitted).  We uphold the agency's determination "unless the evidence presented would *compel* a reasonable

finder of fact to reach a contrary result." *Id.* (quoting *Singh-Kaur v. INS*, 183 F.3d 1147, 1149–50 (9th Cir. 1999)). "Where, as here, the BIA cites [*Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994)] and also provides its own review of the evidence and law, we review both the IJ's and the BIA's decisions." *Ali v. Holder*, 637 F.3d 1025, 1028 (9th Cir. 2011).

To show eligibility for withholding of removal under the INA, an applicant bears the burden of proving that his "life or freedom would be threatened in the proposed country of removal *on account of* race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b) (emphasis added). An applicant for withholding of removal must show "it is more likely than not that he will be persecuted if deported." *Unuakhaulu*, 416 F.3d at 937 (internal alteration and citation omitted). For purposes of withholding, one or more of the protected grounds listed at 8 C.F.R. § 208.16(b) must be "a reason" for the feared persecution. *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).

Flores-Vega does not claim to have previously suffered persecution in Mexico. An applicant who has not suffered past persecution must show a fear of future persecution that is "both subjectively genuine and objectively reasonable." *Tamang v. Holder*, 598 F.3d 1083, 1094 (9th Cir. 2010). Only the objective prong is at issue here. To meet that prong, the applicant must show either that he or she will be "singled out individually for persecution" or that there is a "'pattern or practice' of persecution against the group to which he belongs in his home country, such that, even without any evidence of individual targeting, his fear of persecution is deemed

reasonable." *See Wakkary v. Holder*, 558 F.3d 1049, 1060 (9th Cir. 2009) (citing 8 C.F.R. § 208.16(b)(2)).

Substantial evidence supports the BIA's determination that Flores-Vega cannot satisfy the objective prong. There is no evidence in the record that the danger Flores-Vega may face in Mexico has the required nexus to a protected ground. When asked why Flores-Vega would be subjected to violence in Mexico, both he and his uncle testified that he would be targeted because people in Mexico would know he came from the United States and would assume his family had money for a ransom. Flores-Vega, his mother, and his pastor also cited general conditions of violence related to gangs and an ongoing land dispute in Flores-Vega's hometown.

For purposes of our decision, we accept that Flores-Vega may be in danger if he is removed to Mexico. But the danger is not on account of a protected ground. *See Zetino v. Holder*, 622 F.3d 1007, 1016 (9th Cir. 2010) ("An alien's desire to be free from harassment by criminals motivated by theft or random violence by gang members bears no nexus to a protected ground."); *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151 (9th Cir. 2010) (holding that "returning Mexicans from the United States" was not a cognizable social group for purposes of establishing a protected ground).

Flores-Vega's application for immigration relief also listed his religious identity as a protected ground. But neither he nor any other witness offered testimony that he would be singled out for persecution as an evangelical Christian. Nor do country conditions documents in the record compel the conclusion that there is a "pattern or practice" of persecution against evangelical Christians such that his fear of persecution is reasonable. *See Wakkary*, 558 F.3d at 1060.

The BIA's determination that Flores-Vega failed to show eligibility for withholding of removal is supported by substantial evidence.

The BIA's denial of Flores-Vega's application for protection under CAT is also supported by substantial evidence. To qualify for withholding or deferral under CAT, an applicant must show it is "more likely than not" that he would be tortured in his country of removal. 8 C.F.R. § 1208.16(c)(2). Torture is defined, in relevant part, as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . for any reason based on discrimination of any kind." *Id.* § 1208.18(a)(1). Though torture need not be on account of a protected ground, it must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official." *Id.* The BIA should consider "all evidence relevant to the possibility of future torture, . . . including . . . [e]vidence of past torture inflicted upon the applicant." *Id.* § 1208.16(c)(3).

Flores-Vega and his witnesses testified to general conditions of violence in Mexico. But he has not shown that he is more likely than not to be tortured with the consent or acquiescence of a public official. He has not claimed past mistreatment in Mexico, let alone mistreatment rising to the level of torture. In terms of future torture, he has not shown a greater risk to him than any other Mexican national deported from the United States such that torture would be "more likely than not" in his case. *See Delgado-Ortiz*, 600 F.3d at 1152 ("Petitioners' generalized evidence of violence and crime in Mexico is not particular to Petitioners and is insufficient to meet [the CAT] standard.").

Conclusion

We hold that a conviction for strangulation under O.R.S. § 163.187(1) is a crime of violence, as defined in 18 U.S.C. § 16(a), and is thus an aggravated felony for purposes of 8 U.S.C. § 1227(a)(2)(A)(iii). Flores-Vega's guilty plea renders him removable and also bars him from asylum relief.

We hold that the BIA abused its discretion in designating Flores-Vega's offense of conviction as a "particularly serious crime." We have jurisdiction to review the BIA's decision on the merits that Flores-Vega did not show eligibility for withholding of removal or relief under CAT. We conclude that the BIA's denial of Flores-Vega's application for relief is supported by substantial evidence.

**PETITION FOR REVIEW DENIED.**